Norbert A. LAING, an Individual, on behalf of himself and all other persons, associations, firms and corporations similarly situated, Plaintiff,

v.

MINNESOTA VIKINGS FOOTBALL CLUB, INC., et al., Defendants.

No. 4–71–Civ. 469.

United States District Court, D. Minnesota, Fourth Division.

July 6, 1973.

---

John A. Cochrane and John E. Thomas, Cochrane & Bresnahan, St. Paul, Minn., for plaintiff; Chestnut, Brooks & Burkard, Minneapolis, Minn., of counsel.

Irving R. Brand, Maslon, Kaplan, Edelman, Borman, Brand & McNulty, Minneapolis, Minn., for defendants.

## MEMORANDUM

LARSON, District Judge.

Defendant Minnesota Vikings Football Club, Inc. (hereinafter "Vikings"), moves the Court for summary judgment of this antitrust action. Vikings is a corporation engaged in the business of professional football. Plaintiff is the purchaser of season tickets to Vikings games and he seeks to maintain this action on behalf of a class consisting of all persons who purchased Vikings season tickets in the years 1968, 1969, 1970, and 1971.

Plaintiff's allegation is that defendant is guilty of violation of Section 3 of the Clayton Act and Section 1 of the Sherman Act because defendant illegally "tied" the purchase of tickets to preseason home games to the purchase of tickets to regular season home games. It is alleged in the complaint that "Purchasers of 'season tickets' to regular season 'home' games were required to purchase preseason tickets regardless of whether or not said purchasers wanted the tickets to said pre-season 'home' games," and that "Defendant refused to sell so-called 'season tickets' to ,regular-season 'home' games unless tickets to all pre-season 'home' games are [sic] purchased therewith."

From the record now before the Court it is clear that, as a practical matter, defendant has made available individual game tickets. As stated in the August 28, 1972, affidavit of James Finks, Vice President and General Manager of defendant:

> "In 1968 there were approximately 13,000 tickets available for purchase for each regular season home game to individuals who wished to buy regular season game tickets on an individual game bases; in 1969 there were 9,500 tickets available for purchase on that basis; in 1970 there were 5,100 tickets available for purchase on that basis; and in 1971 there were from 2,500 to 4,100 tickets available for purchase on that basis."

Plaintiff does not dispute these figures. [See, Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at 8.]

The Court is of the view that no claim of "tying" violative of the antitrust laws can stand in light of these facts. While individual game tickets remain available, it cannot be said that defendant has structured the marketing of its tickets in such a way that consumers are compelled to buy something they don't want in order to obtain something they do want.

This Court's conclusion that defendant's merchandising of tickets does not present the requisite compulsion on consumers to support an antitrust "tying" claim comports with the opinion of Judge Garrity in Pfeiffer v. New England Patriots, et al, No. 71–2501–G (D.Mass.1972). Cf., Driskill v. Dallas Cowboys Football Club, Inc., No. CA–3–6313–D (N.D.Texas, 1973).

Having concluded that the critical element of consumer compulsion is here lacking, the Court must grant defendant's summary judgment motion and need not consider the "single product" issue nor the "anti-competitive effect" issue argued by the parties on this motion.