Richard E. DRISKILL, Plaintiff-Appellant,

v.

DALLAS COWBOYS FOOTBALL CLUB, INC., et al., Defendants-Appellees.

No. 73–2659.

United States Court of Appeals, Fifth Circuit.

Aug. 9, 1974.

William E. Skye, Alexandria, La., Carl J. Schmolder, Dallas, Tex., for plaintiff-appellant.

Marshall Simmons, William D. Sims, Jr., Dallas, Tex., for Dallas Cowboys, Leage & Rozell.

Don Rorschach, City Atty., Irving, Tex., Robert W. Smith, Dallas, Tex., for City of Irving, Tex.

Rayford Price, Dallas, Tex., for defendants-appellees.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

THORNBERRY, Circuit Judge:

Driskill brought this action under § 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, alleging that the Cowboys and the City of Irving have established an illegal "tying" arrangement, requiring the purchase of undesirable items—preseason tickets and low-interest stadium bonds—as a condition for the purchase of the desirable item—the season ticket package, with its attendant preferential seating location, parking privileges, and right to reserve a season ticket and a particular seat for the following season. The district court granted summary judgment in favor of defendants, holding as follows: (1) since single game tickets have been available for every home game in the past, Driskill has not been coerced to buy preseason tickets in order to gain admission to the regular season games; (2) the granting of preferred parking to season ticket holders is a reasonable business practice with no anticompetitive effect; (3) since individual home game tickets have always been available, Driskill has not been coerced to buy a stadium bond in order to gain admission to regular season games; and (4) forcing the purchase of a stadium bond or bonds as a prerequisite to the purchase of a season ticket package has no anticompetitive effect. We affirm on the ground that Driskill has not pleaded that the tying of season tickets to preseason tickets and stadium bonds has an anticompetitive effect, nor has he alleged with particularity any material facts in issue that would support a finding of anticompetitive effects or coercion to purchase the bonds so as to avoid an adverse summary judgment.

There has been a spate of cases alleging Sherman Act violations in the tying of preseason tickets to season tickets by various National Football League teams. These cases have all resulted in summary judgments for the defendant teams. *See* Pfeiffer v. New England Patriots Football Club, Inc., D.Mass.1972, 1973 Trade Cas. ¶ 74,267, appeal dismissed, 1 Cir., Nov. 1, 1972, No. 72–1306; Laing v. Minnesota Vikings Football Club, Inc., D.Minn.1973, 372 F.Supp. 59, aff'd 8 Cir. 1974, 492 F.2d 1381, petition for cert. filed, 42 U.S.L.W. 3693, U.S., May 16, 1974; Coniglio v. Highwood Services, Inc. [Buffalo Bills], W.D.N.Y., 1973, 60 F.R.D. 359, aff'd, 2 Cir. 1974, 495 F.2d 1286; Grossman Development Co. v. Detroit Lions, Inc., E.D.Mich. 1973, 1973–2 Trade Cas. ¶ 74,790, appeal docketed, 6 Cir. 1974, No. 74–1093; Rubin v. Miami Dolphins, Ltd., S.D.Fla., May 22, 1974, No. 74–129–Civ–CA. Summary judgments have been granted or upheld on appeal on three different theories: (1) that fans are not in fact coerced into buying tickets to preseason games (as part of a season ticket package) in order to gain admission to regular season games; (2) that no tying of one product to another is possible, since there do not exist two different products —preseason and regular season games —but rather only one indivisible product —professional football games; and (3) that the tying of preseason to regular season tickets has no anticompetitive effect in the tied market. We agree with the conclusion reached by the Second Circuit after a very careful analysis in *Coniglio,* that, although neither of the

first two theories is sufficient to sustain the summary judgment here, the last provides a basis of affirmance. *See also* Grossman Development Co. v. Detroit Lions, Inc., *supra.*

■ A tying agreement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product. . . ." Northern Pacific Ry. v. United States, 1958, 356 U.S. 1, 5, 78 S. Ct. 514, 518, 2 L.Ed.2d 545. Tying agreements violate the Sherman Act

> whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a "not insubstantial" amount of interstate commerce is affected.

*Id.* at 6, 78 S.Ct. at 518. Thus there are four characteristics of an illegal tying arrangement:

(1) two separate products, the tying product and the tied product;

(2) sufficient economic power in the tying market to coerce purchase of the tied product;

(3) involvement of a not insubstantial amount of interstate commerce in the tied market; and

(4) anticompetitive effects in the tied market.

Coniglio v. Highwood Services, Inc., 2 Cir. 1974, 495 F.2d at 1289.

■ It seems clear here, as in *Coniglio*, that a not insubstantial amount of interstate commerce in the tied market is involved, since, according to the affidavit of Texas E. Schramm, President of the Cowboys, season ticket holders have accounted for approximately one-half of the seating capacity of the stadium. Similarly, we agree with the *Coniglio* court that the issues of separability of the preseason and regular season ticket product markets and existence of sufficient market power to coerce purchase of the tied product are triable issues of fact not subject to proper adjudication by summary judgment. As in *Coniglio*, however, the Cowboys have a complete monopoly in the tied market—preseason professional football games in Dallas—and there can thus be no adverse effect on any competitors, even if a tying scheme exists. There being no anticompetitive effect in the tied market, the fourth requirement for a Sherman Act tying scheme is not met, and the portion of Driskill's suit dealing with preseason game tickets was properly dismissed on summary judgment for the defendants.

■ This suit presents a claim not present in any of the other litigation, however. Driskill alleges the tying of undesirable low-interest stadium bonds to the desirable season ticket package, while all the other suits presented only the issue of tying preseason game tickets to those for the regular season games. This claim quite clearly involves two different products—long-term bonds and football tickets—and the Cowboys concededly have a complete monopoly over the latter, which is the tying product. However, even assuming that Schramm's affidavit establishes that a not insubstantial amount of commerce is involved, since each of the season ticket holders must buy one or more stadium bonds which cost $250 each, Driskill failed to forestall summary judgment on this part of his claim by failing to assert specific facts tending to show either exploitation of their monopoly by the Cowboys to coerce the purchase of the bonds or any anticompetitive effect in the tied market for long-term bonds. Since Driskill failed to come forth with a showing of any specific facts supporting his position with regard to either coercion or anticompetitive effects, the summary judgment against him was proper.

Affirmed.