**OGDEN FOOD SERVICE CORP.,**
**Plaintiff-Appellee,**

v.

**Lee Roy MITCHELL, Texas Cinema Corp., et al., Defendants-Appellants.**

**No. 77–3405.**

United States Court of Appeals,
Fifth Circuit.

April 2, 1980.

Rehearing Denied May 8, 1980.

Tobolowsky & Schlinger, Edwin Tobolowsky, Richard L. Arnold, Neal E. Young, Dallas, Tex., for defendants-appellants.

Patrick F. McGowan, Rowland B. Foster, Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and TATE, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant Mitchell owns and operates movie theatres throughout Texas. Appellee Ogden is a national supplier of concession merchandise to theatres. After prolonged negotiation an agreement was reached whereby Mitchell would sell in his theatres merchandise supplied by Ogden and Ogden would provide concession serv-ices and lend Mitchell money for renovation and for construction of new theatres. The loans were conditioned on Mitchell's furnishing satisfactory appraisals and collateral. Ogden asserted that Mitchell never furnished satisfactory appraisals and collateral, and Ogden therefore refused to provide the loans. Mitchell retaliated by refusing to pay the invoice prices for concession goods already provided by Ogden, and Ogden brought this suit for recovery of the reasonable value of the goods and services it had provided. Mitchell counterclaimed, alleging a tying arrangement in violation of Section 1 of the Sherman Act, and violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com.Code Ann. § 17.46.

The jury found for Ogden on all counts and awarded it a lump sum of $101,275, which the district court allocated among the various Mitchell theatres according to the proportion each theatre's unpaid invoices bore to the total unpaid invoices. Mitchell appeals, contending that the district court erred in its instructions on the tying arrangement, in its refusal to submit the Texas statutory claim to the jury, and in allowing Ogden to recover in quantum meruit.[1] We affirm.

## I. Sherman Act claim

Mitchell contends that the district court should not have instructed the jury that an illegal tie-in existed only if Mitchell had been coerced into purchasing the tied product.[2] The district court instructed the jury correctly: coercion is an element of an illegal tie-in. *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1327 (5th Cir. 1976); *Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321, 323 (5th Cir. 1974).[3] The burden of proof of coercion is on the plaintiff. *Kentucky Fried Chicken*

---

1. Mitchell also disputes the district court's handling of the lump sum verdict but offers neither precedent nor argument to support its position.

2. Also Mitchell objects to jury interrogatory 10, which asked:

 Do you find from a preponderance of the evidence that Ogden coerced the Defendants to purchase concession products and management services as a condition of granting the loan?

3. *Heatransfer Corp. v. Volkswagenwork, A. G.*, 553 F.2d 964, 978 (5th Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), modified *Leasco* as applied to suits by third party competitors of suppliers but reiterated the requirement of coercion in suits, such as this one, where one of the parties to a contract seeks to have it declared illegal.

*Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 377 (5th Cir. 1977). Mitchell did not sustain this burden. The jury's finding that Ogden did not coerce Mitchell is supported by the evidence.[4]

### II. Texas Deceptive Trade Practices Act claim

 The district court declined to submit Mitchell's Deceptive Trade Practices Act (DTPA) claim to the jury. The interrogatories indicate that the jury did consider Mitchell's claim, and found that Ogden made no misrepresentation. An act of misrepresentation is an essential element of a DTPA claim. *Spradling v. Williams*, 566 S.W.2d 561, 564 (Tex.1978). Before this court Mitchell contends that the DTPA claim rests on either or both of two promises, each supported by sufficient evidence to submit to the jury:

> Defendants contended that Ogden engaged in false, misleading and deceptive trade practices in inducing Defendants to enter into the concession arrangement through the promises of the uniquely advantageous loans which it never intended to provide, as well as promises of management services, including uniforms, vending machine income and equipment rental which were never provided.

The first prong, alleged promises of uniquely advantageous loans, was disposed of by the jury's answers to interrogatories considered with Rule 49(a). In its answer to Interrogatory No. 3 the jury found that Ogden and Mitchell reached an oral agreement as to all terms and conditions of loans to be made by Ogden to Mitchell; in answer to No. 4 that the agreement contained a condition that collateral and appraisals satisfactory to Ogden would be furnished by

Mitchell; and in answer to No. 5, that Mitchell did not furnish appraisals and collateral satisfactory to Ogden. These interrogatories and answers do not cover the question of causation—was the *cause* of Ogden's refusal to make loans Mitchell's failure, as found by the jury, to furnish satisfactory appraisals and collateral as it agreed to do, or was the *cause* that Ogden never intended to provide the loans in any event? Under Rule 49(a) the judge himself is deemed to have made findings of fact not covered by the jury's answers but consistent with the judgment entered. Thus, in reducing the answers to judgment, the judge impliedly found, or is deemed to have found, that Ogden's reason for not making the loans was Mitchell's failure (as found by the jury) to provide satisfactory appraisals and collateral.

█ With respect to the second prong, the jury found in answer to Interrogatory No. 7 that Ogden failed to provide management services (including uniforms, equipment rental and vending machine income) that it agreed to provide. Mitchell's amended counterclaim had alleged:

> deliberate, fraudulent agreement to lend money and other fraudulent inducements, including assurances of promotional assistance, training assistance, inventory control and other promised methods designed to increase concession sales, all of which were made with no intention of fulfilling them . . . . .

These allegations, however, except for the allegations concerning promises of loans, dropped out of the case in the pretrial order. Both in summarizing Mitchell's DTPA counterclaim and in stating Mitchell's contested issues of law and fact, the pretrial order described the claims against Ogden

---

4. Moreover, any error in the court's instructions on coercion would have been harmless, as another element of an illegal tie-in was not proven. The jury found, on correct instructions and sufficient evidence, that Ogden did not possess the requisite "economic power in the tying market to coerce purchase of the tied product . . . ." *Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321, 323 (5th Cir. 1974). *See also U. S. Steel v. Fortner Enterprises*, 429 U.S. 610, 622, 97 S.Ct. 861, 868, 51 L.Ed.2d 80, 90–91 (1977); *Spartan Grain & Mill Co. v. Ayers*, 581 F.2d 419, 426–27 (5th Cir. 1978), *cert. denied,* —— U.S. ——, 100 S.Ct. 59, 62 L.Ed.2d 39 (1979); Note, *The Presumption of Market Power in Sales of Legally Differentiated Tying Products*, 56 Tex.L.Rev. 1305, 1309–10 & n.14 (1978). Finally, Mitchell failed to prove any damages. *See Keener v. Sizzler Family Steak Houses*, 597 F.2d 453, 456 (5th Cir. 1979).

for engaging in false, misleading and deceptive trade practices only in terms of Ogden's offering the inducement of uniquely advantageous loans. Thus the trial court did not err in declining to submit to the jury a claim of DTPA violation based on promises concerning furnishing management services.

### III. Ogden's quantum meruit claim

■ Mitchell argues that Ogden should not have been permitted to recover in quantum meruit without demonstrating its own compliance with the contract. Quantum meruit is, however, a substitute for action on the contract and is available specifically when the contract is unenforceable because of plaintiff's breach. *Humphrey v. Placid Oil Co.*, 142 F.Supp. 246, 257 (E.D.Tex.1956), *aff'd*, 244 F.2d 184 (5th Cir. 1957); *Colbert v. Dallas Joint Stock Land Bank*, 102 S.W.2d 1031, 1034 (Tex.1937).

■ Mitchell also contends that, because the jury found the parties had entered into a valid contract, recovery in quantum meruit is an inappropriate remedy, citing *Dallas Electric Supply v. Branum*, 185 S.W.2d 427 (Tex.1945). This argument distorts the holding of *Dallas Electric*, which merely affirms black letter law that a party cannot use quantum meruit to expand his own enforceable contract rights. Since the contract here was unenforceable as a result of Ogden's partial breach, *Dallas Electric* does not preclude recovery in quantum meruit. Finally, despite Mitchell's contention to the contrary, the unpaid invoices constitute competent evidence of the value of the goods provided. *See* 12 *Williston, Contracts* § 1485, at 306–07 (3d ed. 1970); 5 Corbin, *Contracts* § 1113, at 601 (1964).[5]

AFFIRMED.

---

5. The jury awarded Ogden some $61,000 less than the amount of the unpaid invoices, but Ogden has not cross-appealed.