Lester SANDLES et al., Plaintiffs,

v.

William S. RUBEN et al., Defendants.

No. 79–6171–CIV–JAG.

United States District Court,
S. D. Florida, N. D.

March 25, 1981.

Abraham H. Carchman, Hallandale, Fla., for plaintiffs.

Maurice M. Garcia and Andrew T. Lavin of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE is before the court upon Plaintiffs Lester Sandles and Edith J. Sandles' Motion for Class Action Certification pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure.

The named plaintiffs brought this class action complaint on behalf of themselves and all other condominium unit owners at Sheridan Lakes Condominium Apartments

and Homes. This condominium development consists of the following: four separate condominium buildings, containing forty-five dwelling units respectively; and ninety-seven "villas" or separate homes. Plaintiffs have moved this court to certify the class to include all 277 units which are subject to a Long-Term Recreation Lease.

The named plaintiffs are purchasers of Condominium Unit 303, located at 2223 Park Lane, Hollywood, Florida. They executed their agreement with Defendant Hollywood Heights, Inc. on March 12, 1971. The standard purchase agreement provides, in part, as follows:

> Purchaser acknowledges this to be a subscription to membership in the Condominium Association, and specifically authorizes the first Board of Directors of the Association to enter into the Management Agreement and Long-Term Lease contemplated herein.

Plaintiffs allege that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 3 and 4 of the Clayton Act, 15 U.S.C. §§ 13a, 13b, by tying the execution of this ninety-nine year lease of lands for recreational purposes to the purchase of condominium units. Plaintiffs seek treble damages and injunctive relief for these alleged antitrust violations.

■ There are four substantive elements of an illegal tying arrangement:

(1) two separate products, the tying product and the tied product;

(2) sufficient economic power in the tying market to coerce purchase of the tied product;

(3) involvement of a not insubstantial amount of interstate commerce in the tied market; and

(4) anticompetitive effects in the tied market. *Bob Maxfield, Inc. v. American Motors Corp.*, 637 F.2d 1033, 1037 (5th Cir. 1981); *Chatham Condominium Associates v. Century Village, Inc.*, 597 F.2d 1002, 1008–09 (5th Cir. 1979); *Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321, 323 (5th Cir. 1974).

To determine whether the proposed class may be certified, the court must examine the nature of the cause of action and the factors set forth under Rule 23 of the Federal Rules of Civil Procedure. Pursuant to Rule 23(a) a class action may be brought if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

In addition to these prerequisites, Rule 23(b)(3) requires a finding by the court that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ The court finds that the proposed class encompassing all 277 units is too broad. It is clear that the questions of law and fact common to the unit owners in the four separate condominium buildings and the ninety-seven villas or separate homes, will be overriden by issues that are particular to each of these groups.

The first element of an illegal tying arrangement is the existence of two separate products—the tying product and the tied product. Although the tied product (recreation lease) is the same, the tying products are not. For one group, the tying product is an apartment unit in a three story condominium building containing a total of forty-five dwelling units per building. For the other group, the tying product is a separate single family home. Moreover, the existence of different tying products requires proof of different relevant markets—the market in condominium units and the market in separate homes.

The proposed class of all of the 180 condominium units in the four condominium buildings consists both of unit owners who

purchased their units from the defendants, and unit owners who purchased their units from the original purchasers. Again, these two groups present disparate questions of law and fact.

For example, the second element of this alleged illegal tying arrangement requires proof that the *developer* has sufficient economic power in the relevant condominium market to coerce unit purchasers to lease the recreation facilities. In explaining the parameters of this element, the Fifth Circuit recently held that, "actual coercion is an indispensable element of a tie-in charge... An antitrust violation occurs only if it goes beyond persuasion and coerces or forces its customer to buy the tied product in order to obtain the tying product." *Bob Maxfield, Inc. v. American Motors, Corp.*, 637 F.2d 1033 at 1038 (5th Cir. 1981).

It is clear that members of the proposed class who were not direct purchasers from the defendants would raise different legal and factual matters than would direct purchasers in proving the requisite force and coercion.[1]

 The court finds that the proper class is comprised of unit owners who purchased condominium units in one of the four multi-unit condominium buildings directly from Hollywood Heights, Inc., the developer of the property.

This class satisfies the prerequisites delineated under Rule 23(a): joinder would be impracticable; there are common questions of law and fact; the claims and defenses of the named plaintiffs are typical of the members of the class; and the representative parties will fairly and adequately protect the interests of the class.

The court further finds that the common questions of law and fact predominate over any questions affecting only individual members, and that a class action is superior to and more efficient than other methods of adjudicating this controversy.

1. This court does not today consider the question of whether the purchaser of a unit from someone other than the developer may bring an action against the developer. Whether such

It is accordingly, ORDERED AND ADJUDGED as follows:

1) That Plaintiffs' Motion for Class Certification be and the same is hereby GRANTED in part, and DENIED in part. Insofar as Plaintiffs move the Court to certify the class of those who purchased condominium units in one of the four condominium buildings, directly from Hollywood Heights, Inc. the Motion will be GRANTED. In all other respects, the Motion will be DENIED;

2) That Plaintiffs shall file a Proposed Notice to the Class, as certified, within twenty (20) days from the date of this Order.

a unit owner has standing, and whether he has suffered an "injury" as defined by the antitrust laws are questions left to another day.