United States Court of Appeals,

Fifth Circuit.

No. 91-6313.

Harold S. McDANIEL, Plaintiff,

v.

ANHEUSER-BUSCH, INC., Defendant, Third Party Appellant,

v.

FORCE CORPORATION, Defendant, Third Party Appellee.

April 1, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES and WIENER, Circuit Judges, and WALTER,[*] District Judg

WIENER, Circuit Judge:

This Texas diversity case involves the interpretation of a unique indemnification provision and the application of the deemed finding and waiver provisions of Rules 49 and 51 in the context of separate trials granted under Rule 42(b).[1] The district court granted summary judgment for Defendant-Appellee Force Corporation (Force), holding that, under the terms of the indemnity clause, Force could only be required to indemnify Plaintiff-Appellant Anheuser-Busch, Inc. (Anheuser) for claims and suits for death, bodily injury, or property damage *caused* by Force's acts or omissions; and that as there had been a finding that the injured claimant here was the 100% cause of his own injuries there could be no finding of causation against Force. Perceiving no reversible error by the district court, we affirm.

I

FACTS

Harold McDaniel was injured while attempting to operate railroad track switch # 23 in a Houston, Texas railyard owned by Anheuser. At the time of his injury, he was employed by Missouri

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

[1]All references to Rules are to the Federal Rules of Civil Procedure unless otherwise noted.

Pacific Railroad d/b/a Union Pacific Railroad Company (the Railroad). In a single district court action, McDaniel sued the Railroad in strict liability under FELA, and sued Anheuser in diversity for negligence. Anheuser subsequently brought a third party action against Force seeking commonlaw contribution and indemnity as well as contractual indemnity.[2] McDaniel never amended his complaint to implead Force as a co-defendant to his tort claim.

Apparently Force had performed services for Anheuser relating to the design, construction, and maintenance of the railyard where McDaniel was injured, including switch # 23. Anheuser's contractual indemnity claim against Force was based on an indemnification provision in a contract covering railyard services provided by Force.[3]

Prior to trial, Force moved for severance or separate trial of the contractual indemnity issue. This motion did not address the common law indemnity or contribution issues. Anheuser agreed to this motion and it was granted, with Force remaining a party in the trial of McDaniel's claim, on the issue of contribution.[4]

McDaniel's suit was submitted to the jury on interrogatories using a special verdict form, pursuant to Rule 49(a). The jury found that Anheuser's alleged negligence did not proximately cause McDaniel's injuries. The jury further found that McDaniel's injuries were caused 100% by his own

---

[2]In Anheuser's initial Third Party Action Against Force Corporation, Anheuser pleaded that it had a contractual right to be indemnified by Force for any liability that Anheuser was adjudged to have to McDaniel. Anheuser also claimed that it had a common law right of action against Force for contribution or indemnity as to any liability Anheuser had to McDaniel.

Anheuser's claims for contractual indemnity against Force were modified considerably in its First Amended Third Party Action Against Force Corporation. In that pleading Anheuser alleged that Force was contractually required to indemnify Anheuser, not only for any judgment, but also for all court costs and attorney's fees in the present action. Anheuser also alleged that Force refused Anheuser's request to assume or handle the defense of McDaniel's suit.

[3]The existence of a contract and, if so, which one and under what terms and conditions, was strongly contested in the district court. For purposes of this appeal, however, we assume (without finding) that such a contract existed and that the indemnity provision proffered by Anheuser was contained in such contract.

[4]No mention was ever made of the commonlaw indemnity issue in Force's motion, the hearing on the motion, the district court's order granting the motion, or in any subsequent portion of the record.

negligence, and that neither Anheuser nor the Railroad contributed any percentage to the causation of McDaniel's injuries. The special verdict was structured so that the jury would only be allowed to consider Force as a cause of the injury if it first found that Anheuser was at least a partial cause of the injury. As the jury attributed 100% of the causation to McDaniel vis a vis Anheuser and the Railroad, it never reached the questions relating to Force. The district court entered a take-nothing judgment against McDaniel. As a result, Anheuser's commonlaw contribution claim against Force evaporated. Neither the court nor any of the parties ever mentioned commonlaw indemnity again so we assume that it too evaporated with the take-nothing judgment.

After its total victory against McDaniel, Anheuser pursued its third party contractual claim for indemnification against Force under the disputed indemnity clause, seeking to recover all costs of defending McDaniel's suit, the majority of which comprised attorney's fees. On motion by Force, the district court granted summary judgment for Force, dismissing Anheuser's indemnity claims. The court held that Anheuser was not entitled to indemnification because the disputed clause required Force to indemnify Anheuser only for claims or suits seeking recovery for injuries caused by an act or omission of Force, a possibility precluded when the McDaniel jury found that McDaniel was the sole cause of his injuries.[5]

II

ANALYSIS

A. *Standard of Review*

The grant of a motion for summary judgment is reviewed de novo, using the same criteria employed by the district court.[6] This court must "review the evidence and inferences to be drawn

---

[5]In its memorandum opinion, the district court stated that summary judgment for Force was appropriate because "there was no act or omission found by the jury that was attributable to Force." The court based this determination on the jury's findings that McDaniel was "100% liable for his own injury" and "100% at fault." We interpret these statements, respectively, as "there was no act or omission found by the jury [to have caused McDaniel's injuries] that was attributable to Force" and "McDaniel was 100% [the cause] of his own injury." "Cause" was the term used in the verdict questions submitted to, and answered by, the McDaniel jury.

[6]*U.S. Fidelity & Guaranty Co. v. Wigginton,* 964 F.2d 487, 489 (5th Cir.1992); *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

therefrom in the light most favorable to the nonmoving party."[7]   A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8]   Summary judgment is appropriate when there is no genuine issue of material fact and only a question of law is presented.[9]

B. *The Indemnity Clause Language*

Anheuser alleges that its relationship with Force is governed at least in part by the disputed indemnity clause.  Force counters that even if the clause in issue were part of a contract between Force and Anheuser (which Force vigorously denies), and even if that clause were effective here, it would not require Force to reimburse Anheuser for its costs and legal fees incurred in defending McDaniel's suit.  Assuming without so deciding that this indemnity provision did govern the relationship between Anheuser and Force, we begin our analysis by examining the language of that clause:

> The *contractor* hereby *agrees to indemnify* and hold harmless *Anheuser*-Busch Companies, Inc. its subsidiaries and affiliated companies (hereinafter referred to as "ABC") *from all claims and suits by* the parties and *third parties for* damages to property and *injuries,* including death to persons, including but not limited to, Contractor or any subcontractor and their respective agents, servants and employees, if any such event of damage or injury shall occur during or incident to the performance of work required under the terms of this Contract, *and from all judgments recovered therefor, and from all expenses in defending said claims and suits,* including court costs, attorneys' fees and other expenses, *caused by the act or omission of the Contractor* or any subcontractor or their respective servants, agents and employees, and not by the sole fault or negligence of ABC, its servants, agents or employees.[10]

------

[7]*U.S. Fidelity & Guaranty Co.,* 964 F.2d at 489;  *Baton Rouge Building & Construction Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986).

[8]Fed.R.Civ.P. 56(c).

[9]*Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[10]The remainder of the indemnity clause provides:

> The Contractor also agrees to reimburse ABC for any and all expense and loss resulting from damage to its property *caused by the act or omission of Contractor,* or any subcontractor or their respective servants, agents and employees and not by the sole fault or negligence of ABC, its servants, agents or

The determination of whether a contract is ambiguous is one of law.[11]  This is not a standard indemnity clause by any means;  it is unique and was tailor-made by Anheuser for its own use.  Still it is not ambiguous.  In the lexicon of indemnification, the instant provision is properly classified as a limited indemnity clause in that it does not require Force to defend Anheuser against claims and suits;  neither does it require Force to indemnify Anheuser for the costs it incurs in defense of baseless claims.  "Cause" is an operative, limiting term in this indemnity provision;  it requires Force to pay all costs and expenses incurred by Anheuser in defending claims and suits for injuries if—but only if—such injuries are actually *caused* by an act or omission of Force.

A careful parsing of the subject clause confirms that conclusion.  Such an examination begins with the indemnity clause's general identification of that for which Anheuser is to be indemnified:  claims and suits by the parties and third parties.  Next, the clause limits the claims and suits covered to those for damages to property and injuries to persons.  Skipping over the language that limits the claims to those, such as here, with a nexus to the work covered by the contract of which the clause ia a part, we encounter a list of the elements of the claims and suits for which Anheuser is to be indemnified:  judgments recovered therefor, and all expenses of defending the claims and suits.

At this point in our dissection of the clause, we encounter—albeit somewhat attenuated due to the archaic, run-on drafting techniques employed—the words "caused by the act or omission of [Force]."  Force's causation applies to that for which it must indemnify Anheuser:  claims and suits, all judgments recovered on such claims and suits, and all costs and expenses of defending such claims

---

employees.  Contractor agrees as a specific element of this Contract to indemnify ABC, as provided in this paragraph, even though ABC may have been contributorily negligent with respect to the occurrence of any such event of damage or injury notwithstanding whether such contributory negligence would be characterized as either passive or active in nature.

The Contractor shall not contract for the performance of any part of the work herein contracted for without imposing similar obligations on any contractor or subcontractor so employed to indemnify ABC.

(Emphasis added).

[11]*Toren v. Braniff, Inc.,* 893 F.2d 763, 765 (5th Cir.1990).

and suits.[12]  But which claims and suits?  Those for personal injury and property damage.  Beyond peradventure, then, that which must be "caused by" the act or omission of Force are those very same injuries and damages.

Conversely, as the suits and claims are first defined as those "by the parties and third parties," "caused by" could never be read to modify "claims and suits."  The assertion of a claim or suit "by" Anheuser or a third party could not be "caused by" an act or omission of Force unless those parties were mere marionettes controlled by Force.  "Caused by" can only refer to *injuries* and *damages.*

In effect, Anheuser itself recognized the causality requirement in its pleadings.  In its First Amended Third Party Action Against Force Corporation, Anheuser describes the indemnity clause as "an indemnification agreement whereby FORCE agrees to indemnify and hold harmless BUSCH from all claims and suits and from all judgments recovered therefore, and from all expenses (including court costs and attorney's fees) caused by the act or omission of Force."  More obtusely, but no less certainly, this allegation confirms that indemnity lies *only* if it relates to injuries and damages caused by Force.  Clearly, a baseless claim (as McDaniel's turned out to be) alleging fault regarding Switch # 23 cannot be said to have been caused by Force or anyone else but McDaniel.  It is the injury, not the claim or suit, which must be caused by Force to trigger indemnification under this unique, limited clause.

Before Anheuser can recover its defense costs and expenses from Force, it must establish that an act or omission of Force's caused the injuries for which McDaniel brought suit.  Mere allegations of causation and responsibility are insufficient, even in opposition to a motion for summary judgment.[13]  To its irreversible detriment, Anheuser failed to establish this indispensable causal link in the trial of McDaniel's claims.  Therefore, Anheuser is not entitled to a second opportunity to establish causation.  The procedural maneuverings of the parties must be examined in detail to see

---

[12]We note as an aside that nothing in the language of the indemnity clause would appear to exempt Force from its obligation to indemnify Anheuser if a claim or suit subject to the indemnity clause were settled instead of proceeding to trial and judgment.

[13]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

how and why this happened.

C. *Claims and Compulsory Counterclaims*

McDaniel originally filed his suit because he sustained injuries while working for the Railroad in Anheuser's railyard. In his Complaint, McDaniel alleged that Anheuser was liable for his injuries because it "was guilty of various acts of omission and commission, all of which were negligence as that term is known in the law," that proximately caused his injuries.[14] McDaniel did not allege any form of either strict liability or products liability against Anheuser and did not name Force at all.

Anheuser t hen impleaded Force as a third party defendant, alleging contractual indemnity,

_____

[14]McDaniel's specific allegations regarding Anheuser were:

> 1. They improperly designed the switching concept and failed to properly install the switching mechanism. Although acting through contractors, this Defendant is answerable for any defect in the design and the switch mechanism;
>
> 2. Failed to properly inspect the switch;
>
> 3. Failed to properly maintain the switch;
>
> 4. They failed to properly maintain the work area and the grounds surrounding the switch;
>
> 5. They failed to provide sufficient lighting so that persons of such class as the Plaintiff would be aware of any possible safety hazards in the work area;
>
> 6. They created a hazardous condition in the manner in which the ground covering in and around the switch was installed;
>
> 7. They failed to properly supervise the switching activity in the yards on their premises;
>
> 8. They failed to provide Plaintiff, and such other persons of the same class as Plaintiff, with a safe place to perform his duties;
>
> 9. They failed to warn Plaintiff, and other persons of the same class as Plaintiff, of the unsafe working conditions in and around the switch;
>
> 10. They failed to provide for systematic surveillance and inspection of the switch and the adjacent working areas so as to spot any hazards and be in a position to give warnings to persons working in that area;
>
> 11. They failed to provide adequate ground covering in the area of the switch so as to assure proper footing for persons working in the area; and
>
> 12. They failed to warn Plaintiff of the hazardous conditions in the area.

contribution, and commonlaw indemnity for any liability to McDaniel resulting from acts of Force's employees or agents. Force subsequently filed a counterclaim against Anheuser for commonlaw contribution and indemnity, adopting by reference, and pleading against Anheuser, all of McDaniel's original allegations.

Rule 13(a) describes a compulsory counterclaim as "any claim which at the time of the serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require the presence of third parties of whom the court cannot acquire jurisdiction."[15] A counterclaim is compulsory when both the original claim and the counterclaim arise from the same "aggregate of operative facts."[16] By the time this case proceeded to trial, Anheuser was the subject of claims, cross-claims,[17] and counterclaims regarding McDaniel's injuries that had occurred in the Anheuser railyard. Consequently, any counterclaim by Anheuser against Force that arose out of this occurrence necessarily had to be brought in the instant suit or be barred. "A counterclaim which is compulsory but is not brought is thereafter barred."[18]

D. *Severance or Separate Trial?*

Shortly before the trial on McDaniel's claim was to begin, Force filed a motion entitled "Third-Party Defendant's Motion for Severance/Motion for Separate Trial." Anheuser agreed with the motion provided that Force remained in the first trial on the contribution claim. The trial court ordered that "Defendant Force Corporation's Motion for Severance/Motion for Separate Trial be granted."

---

[15]Fed.R.Civ.P. 13(a).

[16]*Birmingham Fire Ins. Co. v. Winegardner and Hammons, Inc.,* 714 F.2d 548, 551 (5th Cir.1983) (citations omitted).

[17]The Railroad also filed a cross-claim against Anheuser and Force for commonlaw contribution and indemnity, also adopting by reference, and pleading against Anheuser and Force, all of McDaniel's original allegations. McDaniel, however, never amended his pleadings to include a claim against Force.

[18]*Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Cleckner v. Republic Van & Storage Co.,* 556 F.2d 766, 768-69 (5th Cir.1977).

We note initially that motions for severance and motions for separate trial are distinct and preferably should be treated as such.[19]  Upon close analysis we find that, despite the ambiguous title of the instant motion and its equally ambiguous treatment by the district court, a separate trial rather than a severance was sought and granted.  Force's motion contained a reference to Rule 42(b) of the Federal Rules of Civil Procedure, which governs separate trials, but contained no reference to Rule 21, which governs severances.  Also, the motion tracked the language of Rule 42(b) when it stated that "the ordering of separate trials in this matter would be more conducive to judicial expediency and economy."  And even after the motion was granted, the subsequent proceedings for both trials continued to bear the same docket number.

Under Rule 42(b), a separate trial may be ordered "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy ... always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States."[20]  Separation of issues, however, is not the usual course that should be followed.[21]

"There is an important limitation on ordering a separate trial of issues under Rule 42(b):  the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had

---

[19]*See generally* 9 Wright & Miller, *Federal Practice and Procedure*:  Civil § 2387 (1971).

> The procedure authorized by Rule 42(b) should be distinguished from severance under Rule 21.  Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently.  Unfortunately, this distinction, clear enough in theory, is often obscured in practice since at times the courts talk of "separate trial" and "severance" interchangeably.  *Id.*

> *Compare United States v. O'Neil,* 709 F.2d 361, 365 (5th Cir.1983) (distinguishing severance from separate trial) *with Randolph v. Laeisz,* 896 F.2d 964, 969 (5th Cir.1990) *and United States v. 499.472 Acres of Land,* 701 F.2d 545, 551 (5th Cir.1983) (both using the term "severance" in connection with motion under Rule 42(b)).

[20]Fed.R.Civ.P. 42(b).

[21]*Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 318 (5th Cir.1978);  *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1323-24 (5th Cir.1976).

without injustice."[22]  "This limitation on the use of bifurcation is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the *general right of a litigant to have only one jury pass on a common issue of fact.*"[23]  This rule has an additional, pragmatic basis—if two juries were allowed to pass on an issue involving the same factual and legal elements, the verdicts rendered by those juries could be inconsistent, producing intolerably anomalous results.[24]

Both the parties and the district court appear to have recognized the separate and distinct prerequisite for separate trials.  In its motion, Force recites that "the issues to be litigated and resolved between it and Third-Party Plaintiff Busch, are completely independent and separate from those to be litigated in the primary lawsuit initiated by McDaniel against the Railroad and Busch."  The motion further recites that "the ordering of separate trials in this matter would be more conducive to judicial expediency and economy."  All points of contention specifically addressed in Force's motion are contractual issues;  causation of the underlying tort claim is not mentioned at all.[25]

---

[22]*Swofford v. B. & W., Inc.,* 336 F.2d 406, 415 (5th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965);  *Blue Bird Body Co.,* 573 F.2d at 318;  *Response of Carolina,* 537 F.2d at 1324.

[23]*Blue Bird Body Co.,* 573 F.2d at 318 (emphasis added);  *Gasoline Products, Co. v. Champlin Refining Co.,* 283 U.S. 494, 499-500, 51 S.Ct. 513, 514-515, 75 L.Ed. 1188 (1931).

[24]*Blue Bird Body Co.,* 573 F.2d at 318.

[25]The motion specified that the contested issues between Force and Anheuser included, but were not limited to:

> 1. Whether the provisions of Busch Form ADM-66 were in effect at the time of the incident made the basis of this litigation.
>
> 2. Whether Busch is entitled to contractual indemnification for the incident and/or injuries claimed by Harold McDaniel under the provision of Busch Form ADM-66.
>
> 3. Whether Busch is entitled to contractual indemnification for the incident and/or injuries claimed by Harold McDaniel under the provisions of Busch Purchase Order No. HOU 82105 B.
>
> 4. Whether Force was required to perform any work, other than that specifically requested and authorized by Busch, on switch no. 23 where Plaintiff alleges to have sustained an injury.
>
> 5. When if at all, did Busch make a properly substantiated and documented demand for contractual indemnity.

Anheuser went along with Force's motion to try the contractual indemnity issue separately. At the motion hearing, counsel for Anheuser stated: "Yes, we do agree with severing the contractual, Your Honor. We're going to keep them in with the contribution claim ... and *if there is a contractual obligation we will pursue that later on.*"[26]

At the conclusion of the motion hearing, the district judge noted: "I believe the record reflects there are no objections to a motion for separate trial on the issue of the contractual liability or indemnity question between Anheuser-Busch and Force, and so that motion will be granted."

It is clear that the parties and the district court intended to try separately only issues arising from the contractual relationship between Anheuser and Force, including those relating to the disputed indemnity clause. Nevertheless, Force was to remain in the primary trial, and that trial was to decide McDaniel's tort claims. Causation of McDaniel's injuries was an essential element of his tort claim. Indisputably, the causation findings by the jury in that trial would also be the centerpiece of the second trial; causation could not be tried anew in the second trial. Under *Alabama v. Blue Bird Body Co.,*[27] if the first jury decides the causation issue, the second jury cannot consider that same issue.[28]

E. *Submission to the Jury*

1. *Waiver Principles*

As noted, this case was submitted to the jury in special verdict form, pursuant to Rule 49(a). The use of a special verdict requires the jury to return a written finding on each submitted issue of fact. Of particular importance to the instant case are the rules governing waiver with respect to special interrogatories and instructions.

Rule 49(a) provides in pertinent part:

> If ... the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court

---

[26]Emphasis added.

[27]573 F.2d 309 (5th Cir.1978).

[28]*Id.* at 318.

may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.[29]

Rule 51, which governs instructions to the jury and objections to jury instructions, similarly provides in part:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that he court instruct the jury on the law as set forth in the requests.... No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.[30]

A party has the burden to request the submission of its issues to the jury and to request instructions on each such issue. If a party neither requests submission of an issue nor objects to the omission of that issue from the special interrogatories given to the jury, such party is deemed to have waived its right to have the jury determine that issue.[31] Likewise, failure to object to the wording of a special issue prevents a party from objecting to such wording on appeal.[32] Conversely, by requesting the submission of a special issue, a party prevents an adverse Rule 49(a) "deemed finding" by the court in the event that the requested issue is refused.[33]

A party must inform the trial court of deficiencies in the charge in such a manner that the judge can act upon the objection.[34] Without more, a pretrial request for instructions or interrogatories is ordinarily insufficient to preserve error; theories of liability and defense frequently change during the course of a trial, and a trial judge will seldom make a final decision regarding the charge until the evidence is complete.[35]

---

[29]Fed.R.Civ.P. 49(a).

[30]Fed.R.Civ.P. 51.

[31]*MBank Fort Worth, N.A. v. Trans Meridian, Inc.,* 820 F.2d 716, 723-24 (5th Cir.1987); *Molex, Inc. v. Nolen,* 759 F.2d 474, 478 (5th Cir.1985).

[32]*Geosearch, Inc. v. Howell Petroleum Corp.,* 819 F.2d 521, 527 (5th Cir.1987).

[33]*Solis v. Rio Grande City Independent School,* 734 F.2d 243, 249 n. 5 (5th Cir.1984).

[34]*Fischer v. Dallas Federal Savings and Loan Assoc.,* 835 F.2d 567, 569-70 (5th Cir.1988); *Farrar v. Cain,* 756 F.2d 1148, 1150 (5th Cir.1985).

[35]*Fischer,* 835 F.2d at 569-70.

When, as here, an issue of causation is omitted from the jury charge and the trial court makes no specific finding regarding cause, that court will be deemed to have found proximate causation if such a finding is supported by the evidence and is consistent with the judgment.[36]

Nevertheless, the requirement that a party request or object in order to prevent an adverse deemed finding is not absolute. This court has refused to deem the existence of a disputed fact "where it appear[ed] that the district court, without objection by either party, specifically chose not to submit the issue to the jury."[37] Additionally, we will invoke the plain error doctrine to prevent a miscarriage of justice despite a party's failure to make a sufficiently specific objection under Rule 51.[38] These limited exceptions are inapplicable to the instant case, however; the issue of causation by Force was submitted to the jury, albeit in a conditioned form, and we find no fundamental error in the charge that could result in a miscarriage of justice.

## 2. *Issues and Instructions Actually Submitted*

The charge submitted to the jury in the trial of McDaniel's claims included the following special interrogatories and instructions:

Instruction 16

In order to find Anheuser-Busch liable to the Plaintiff, you must find by a preponderance of the evidence the following:

First: That Anheuser-Busch had actual or constructive knowledge of some unreasonable risk of harm to McDaniel;

Second: That Anheuser-Busch did not exercise reasonable care to reduce or to eliminate the risk of harm to McDaniel; and

Third: That Anheuser-Busch's failure to use such care proximately caused McDaniel's personal injuries.

Question 2

---

[36]Fed.R.Civ.P. 49(a); *James v. Meinke,* 778 F.2d 200, 207 (5th Cir.1985); *Ogden Food Service Corp. v. Mitchell,* 614 F.2d 1001, 1003 (5th Cir.1980).

[37]*Cunningham v. Healthco, Inc.,* 824 F.2d 1448, 1458 n. 3 (5th Cir.1987).

[38]*Nowell v. Universal Electric Co.,* 792 F.2d 1310, 1316-18 (5th Cir.), *cert. denied,* 479 U.S. 987, 104 S.Ct. 578, 93 L.Ed.2d 581 (1986) (holding that plain error resulted when two diametrically conflicting instructions on damages were submitted to the jury); *Farrar v. Cain,* 756 F.2d at 1150-51.

Did the negligence, if any, of those named below proximately cause the injury in question?

Answer "Yes" or "No" for each of the following:

Anheuser-Busch, Inc. <u>No</u>

Harold McDaniel <u>Yes</u>

Question 3

For each person found by you to have caused the injury in question, find the percentage caused by—

Anheuser-Busch, Inc. <u>0</u> %

Harold McDaniel <u>100</u> %

Railroad <u>0</u> %

Total 100 %

If in answer to Question 2 you have found that the negligence of Anheuser-Busch caused the injury in question, then answer the following Questions, otherwise do not answer the following Questions.

Question 4

Do you find from a preponderance of the evidence that on the occasion in question that Force Corporation failed to perform the switch maintenance requested by Anheuser-Busch on Switch # 23?

Answer "Yes" or "No".

Answer: _____

Question 5

Do you find from a preponderance of the evidence that on the occasion in question that such a failure, if any, was negligent?

Answer "Yes" or "No".

Answer: _____

Question 6

Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the Plaintiff's injuries?

Answer "Yes" or "No".

Answer: _____

If you have answered Question 6 "Yes" and only in that event, then answer the following Question.

Question 7

For each person found by you to have proximately caused the injury in question, find the percentage caused by—

Anheuser-Busch, Inc.         ____   %

Force Corporation    ____    %

Total  100      %

-----

McDaniel originally pleaded a broad based negligence claim against Anheuser[39] but by the time the case was submitted to the jury, Anheuser had succeeded in narrowing McDaniel's claim to one grounded only in a theory of land occupier liability. Under Texas law, a suit based on land occupier liability is a simple negligence action.[40] Therefore, when McDaniel's tort claim was finally submitted to the jury, Anheuser's contribution claim against Force was limited to whether Force's maintenance of switch # 23 was negligent.[41]

Under Texas law, a premises occupier who hires an independent contractor to maintain the property in safe condition is not relieved of liability for the negligent maintenance of the property.[42] In keeping with that maxim, and of significance to this appeal, the jury charge actually submitted was so structured that the jury could not assign any causation to Force unless and until it first assigned some percentage of causation to Anheuser.

3. *Analysis of Waiver and the Instant Charge*

---

[39]*See supra* note 14.

[40]*Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983).

[41]In Anheuser's later motion for summary judgment in its indemnity action against Force, Anheuser also asserted: "McDaniel's injury, if any, was *caused* by an omission by Force—Force's failure to properly maintain Switch # 23." (emphasis added).

[42]*Denton v. Van Page,* 701 S.W.2d 831, 835 (Tex.1986); *Bond v. Otis Elevator Co.,* 388 S.W.2d 681 (Tex.1965); *Moeller v. Fort Worth Capital Corp.,* 610 S.W.2d 857, 861 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) (adopting Restatement (Second) of Torts § 425).

The record is devoid of requested and refused special issues or interrogatories. Only one instruction that was requested and refused is found, and it is not germane to the issue here under consideration.[43] There is no evidence that any objection to the interrogatories or instructions was made. Undoubtedly, Anheuser could have made any number of requests or objections to ensure that the McDaniel jury would address causation with regard to Force, including an objection to the "conditioning" of questions relating to the liability of Anheuser and Force.

An objection complying with the requirements of Rule 51 is required to preserve error regarding improper conditioning.[44] If an issue goes unanswered as a result of its conditional submission after the proponent of the issue has failed to object to that conditional submission, and the trial court makes no express finding on that issue, then under Rule 49(a) the trial court will be deemed to have found on that issue in accord with the judgment.[45]

Questions regarding Force's causation were submitted to the jury conditionally, without objection by Anheuser. Faithfully following the conditioning instructions, the jury did not answer the questions directly pertaining to Force's causation. In the questions that were answered by the jury, McDaniel was found to have been the sole cause of his own injuries.

Anheuser correctly points out that the jury did not affirmatively find a lack of causation by Force. Anheuser had the burden under Rules 49(a) and 51, however, to ensure that its issues (including causation by Force) were properly submitted to the jury in such a manner that the jury could and would decide those issues. Having failed to do so, Anheuser has waived its right to have any jury determine the issue of causation by Force.

As Anheuser waived its right to a jury determination of the causation issue, Rule 49(a) would

---

[43]The text of this proposed instruction reads: "The owner of a place of business owes to every invitee who comes upon the premises the nondelegable legal duty to exercise ordinary care, under the circumstances, to keep the premises in a condition reasonably safe for use by the invitee."

[44]*Laguna Royalty Co. v. Marsh,* 350 F.2d 817, 822 (5th Cir.1965) (requiring Rule 51 objection to conditional submissions, even though requested issues called for unconditional submission); *Garland v. Lane-Wells Co.,* 185 F.2d 857, 859 (5th Cir.1950).

[45]Fed.R.Civ.P. 49(a); *Ogden Food Service Corp. v. Mitchell,* 614 F.2d 1001, 1003 (5th Cir.1980); *United States v. Trinity Universal Insurance Co.,* 457 F.2d 950, 956 (5th Cir.1972).

have permitted the trial court to make a finding on that issue. Anheuser again correctly points out that the court made no express findings with regard to causation by Force. The court did, however, enter a take-nothing judgment for McDaniel based on the jury findings.[46]

The plain language of Rule 49(a) provides that "the court *may* make a finding" on a given issue if it is "omitted [from the jury charge] without such demand."[47] The district court is not obligated to make express findings on any such issue. Rule 49(a) further provides, however, that if the district court does not make express findings "it *shall* be deemed to have made a finding in accord with the judgment on the special verdict."[48] Under the circumstances of the instant case, the district court is deemed to have found Force to be free of causation, just as the jury found Anheuser and the Railroad free of causation. All of this is totally consistent with the judgment of the court.

But we need not rest our affirmation on the fiction of a deemed finding here, however. The jury implicitly found Force free of causation when it found Anheuser free of causation.

Although Anheuser's reasoning for its actions regarding the severance and the submission of the charge is not stated in the record or in Anheuser's brief to this court, it appears to have been part of a trial strategy that was, after all, substantially effective. By the time Force made its motion for separate trial, the Railroad had already entered into a Mary Carter agreement with McDaniel.[49] The other defendants—Anheuser and Force—apparently acted in concert to present a unified opposition

---

[46]The Final Judgment reads in part: "After jury deliberations, the jury returned a unanimous verdict finding that the plaintiff was 100% at fault in his accident. Based upon the jury's findings, which are adopted and incorporated herein, the Court concludes that the plaintiff shall take nothing by his suit."

[47]Fed.R.Civ.P. 49(a) (emphasis added).

[48]*Id.* (emphasis added).

[49]A Mary Carter agreement generally is a secret contract between the plaintiff and one of several defendants whereby the contracting defendant will settle with the plaintiff before trial, but must remain in the suit, and will be reimbursed to some specific degree from the plaintiff's recovery from the other defendants. A Mary Carter agreement gives the contracting defendant a strong incentive to help the plaintiff recover at the expense of its codefendants. *See Marathon Oil Co. v. Mid-Continent Underwriters,* 786 F.2d 1301, 1303 n. 1 (5th Cir.1986); *Wilkins v. P.M.B. Systems Engineering, Inc.,* 741 F.2d 795, 798 n. 2 (5th Cir.1984). The Texas Supreme Court has recently held that Mary Carter agreements are void in Texas as violative of sound public policy. *Elbaor v. Smith,* 845 S.W.2d 240 (Tex.1992).

to McDaniel's claims and to narrow the jurors' focus in their determination of liability.

Even though the manner in which the charge and special interrogatories were submitted eventuated to Anheuser's detriment on the contractual indemnity issue, it did prevent the jurors from considering anything other than a narrowly defined land occupier liability theory when they determined whether Anheuser was liable. Furthermore, obvious trial strategy suggests that if the jury directly considered the conduct of both Anheuser and Force and found Force partially liable, it would also almost certainly assign some liability to Anheuser.

Ironically, Anheuser cannot prevail in the instant action because its strategy against McDaniel worked so well. If the jury had found that Anheuser caused *any* percentage of McDaniel's injuries, Anheuser would not be in its present position. As the situation stands, Anheuser will not recover the $47,241.74 it was seeking from Force, but neither did it have to pay any of the over $1,128,000.00 sought by McDaniel. Considering the results, we cannot categorically state that Anheuser's actions were ill considered. If, on the other hand, we have erroneously construed a lack of foresight as clever strategy, Anheuser would be even less deserving of sympathy. Either way, however, we find Anheuser deserving of no indemnification for the expense of its eminently successful defense of claims of injury not found to have been caused by the indemnitor.

## III

## CONCLUSION

Anheuser's self-made indemnity clause is not ambiguous. When the convolutions of style and syntax are straightened, the plain wording of the clause requires Force to indemnify Anheuser for suits and claims for injuries to the parties or third persons and judgments—and costs of defense—arising from those claims and suits, if—but only if—such injuries have been caused by an act or omission of Force. Assuming, without deciding, that this indemnity clause governed the relationship between Anheuser and Force, we hold as a matter of law that Anheuser is precluded from establishing the prerequisite causation by Force.

Any claim by Anheuser that an act or omission of Force caused McDaniel's injuries was a compulsory counterclaim against Force. Within McDaniel's damage suit, the issue of causation of

McDaniel's injuries was tried to and determined by the jury. The causation issue cannot be tried between the same parties twice, once for purposes of contribution and again for purposes of contractual indemnity.

Finally, as Anheuser failed to secure an express jury finding on causation by Force and failed to object to the conditional submission of that issue to the jury, and as the district court made no express finding on the issue, Anheuser must suffer either a deemed finding that no act or omission of Force caused McDaniel's injuries or an implied finding to that effect as a result of the jury's finding of no causation by Anheuser. For the foregoing reasons, the district court's grant of summary judgment for Force Corporation, dismissing Anheuser-Busch, Inc.'s contractual indemnity claim for the costs and expenses of defending McDaniel's tort suit, is

AFFIRMED.

WALTER, District Judge, specially concurring:

I would concur with the opinion of Judge Wiener in every respect, but I would reach the result in a single leap.

The district court, with flawless logic, held that Anheuser was not entitled to indemnification because Force was only required to indemnify Anheuser for claims for injuries caused by an act or omission of Force, a possibility precluded by the jury finding that McDaniel was the sole cause of his injuries.[1] Anheuser's indemnity clause is not ambiguous. The plain wording requires Force to indemnify Anheuser for claims and costs of defense, if, but only if, such injuries were caused by an act or omission of Force. The jury found that McDaniel's injuries were caused 100% by his own negligence; that neither Anheuser nor the Railroad caused McDaniel's injuries. A determination that Anheuser was a cause of the injury was a *sine qua non* for any finding of causation by Force.[2] The finding by the jury of 0% cause against Anheuser is determinative. It is impossible that Force caused

---

[1]In its opinion, the district court stated that summary judgment for Force was appropriate because "there was no act or omission found by the jury that was attributable to Force." The court based this determination on the jury's findings that McDaniel was "100% liable for his own injury" and "100% at fault."

[2]But not *vice versa;* Anheuser could have been held liable without fault/cause on the part of Force.

anything.  To hold otherwise would risk conflicting findings of fact within the same case.

Assuming, as we have, that this indemnity clause governed the relationship between Anheuser and Force, there is nothing further to litigate.  The district court's grant of summary judgment is correct.