**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 96-31260

_____

NEW YORK LIFE INSURANCE COMPANY,

Plaintiff - Appellee,

VERSUS

JANE DESHOTEL; ET AL,

Defendants,

JUNE G. SMITH,

Defendant - Appellant,

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

_____

No. 96-31269

_____

JUNE G. SMITH, ET AL.,

Plaintiffs,

JUNE G. SMITH,

Plaintiff - Appellant,

VERSUS

NEW YORK LIFE INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

June 1, 1998

Before JOLLY, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

In these consolidated appeals, Appellant June G. Smith,[*] whose claim to be the sole beneficiary of her husband's life insurance policies was rejected in previous litigation, seeks to have us reverse (1) the judgment of the United States District Court for the Eastern District of Louisiana enjoining Smith from prosecuting two delictual civil actions against New York Life based on the alleged negligence of New York Life in mishandling and not recording a form naming Smith beneficiary of the life insurance policies, originally filed in state court and later removed to the United States District Court for the Western District of Louisiana; and (2) the judgment of the Western District Court dismissing those civil actions with prejudice based on the Eastern District Court's injunction.

I.

Rodney Smith purchased five life insurance policies from New York Life between 1964 and 1974. The original beneficiary listed on each policy was his wife, June Smith. In September 1991, the Smiths separated after thirty-one years of marriage. Two years later, Rodney Smith was diagnosed with terminal cirrhosis of the liver. He designated his half-brother, Donald Kelley, to aid him in his business affairs during his illness.

On February 14, 1994, Rodney Smith's insurance agent, Thomas C. Klotz, received a change of beneficiary form designating Kelley

---

[*] Appellant June G. Smith appears in this litigation in both her individual capacity and as administrator of the Succession of Rodney G. Smith. For convenience, we refer to her in both capacities as "June G. Smith" or "Smith."

and Jane Deshotel -- a high school and college friend of Rodney Smith -- as co-beneficiaries of Rodney Smith's life insurance policies. Klotz sent the form to New York Life's Customer Service Office (the "CSO") in Dallas for processing. On February 17, Klotz received another change of beneficiary form signed by Rodney Smith -- this time indicating Kelley as the sole beneficiary. The next day, in Klotz's presence, Rodney Smith executed a change of beneficiary form designating Jane Deshotel as sole beneficiary. This change of beneficiary was received and processed by the CSO on February 24.

Rodney Smith died on May 6, 1994. June Smith alleges that, before he died, Rodney Smith made one final change to his policies. According to June Smith, on March 11, 1994, Rodney Smith signed a change of beneficiary form designating her as the sole beneficiary. She contends that he instructed Kelley to hold onto the form until further notice, and that later, on the day of his death, Rodney Smith directed Kelley to submit the final change of beneficiary form to New York Life. Kelley states that he mailed the form to the office of insurance agent Linwood Broussard. Broussard's office manager testified that she received the change of beneficiary form. However, the form was never received or processed by the CSO, and consequently, the records of the CSO continued to indicate that Jane Deshotel was the sole beneficiary.

When New York Life received beneficiary claims from both Jane Deshotel and June Smith, it instituted an action for interpleader under Federal Rule of Civil Procedure 22 in the District Court for

3

the Eastern District of Louisiana.  In its complaint for interpleader New York Life stated that it had no beneficial interest in the policies but that it was only a stakeholder willing to make payment to the person lawfully entitled to receive the proceeds.  The company said that it had been unable to determine which of the claimants was entitled to payment.

The New York Life complaint for interpleader, filed October 11, 1994, alleged, in pertinent part, the following:

9.
In investigating the conflicting claims, New York Life records revealed a change of beneficiary form dated February 12, 1994, which purported to bear the signature of Rodney G. Smith and which named  "Jane Deshotel, a Friend and Donald W. Kelly, a half brother to share and share alike" as first beneficiaries of the Policies.  The form indicates that it was forwarded to New York Life Central Records on February 18, 1994.

10.
On information and belief, Rodney G. Smith's wife, Jane G. Smith, had been the beneficiary of the above policies prior to the change of beneficiary executed on February 12, 1994.

11.
New York Life records further revealed a change of beneficiary form dated February 18, 1994, which purported to bear the signature of Rodney G. Smith and which named "Jane Deshotel, Friend of Insured" as first beneficiary of the Policies.  The form indicates that it was forwarded to New York Life Central Records on March 2, 1994.

12.
New York Life also was presented with a change of beneficiary form dated March 11, 1994 which purported to bear the signature of Rodney G. Smith and which named "June Smith (wife)" as beneficiary of the Policies.

13.
New York Life was advised that the foregoing change of beneficiary form had been turned over to a New York Life agency office on May 10, 1994 and that the form then was forwarded to New York Life's Dallas Customer Service

4

Office for processing.  New York Life has no record of the submission or processing of the March 11, 1994 change of beneficiary form.

New York Life deposited with the court the policy proceeds plus interest -- $106,397.51.  New York Life was granted summary judgment dismissing it from the interpleader action.  Jane Deshotel and June Smith filed cross motions for summary judgment.  The district court found that Rodney Smith and New York Life had contracted that changes in beneficiary would not be enforceable absent recordation of the change at the CSO.[2]  The court determined that as a matter of law Rodney Smith had not strictly complied with the policy.  Therefore, on September 12, 1995, the Eastern District Court rendered summary judgment in favor of Jane Deshotel, decreeing her to be the owner of the insurance proceeds.

Smith appealed.  This court, on March 22, 1996, affirmed the Eastern District Court's judgment declaring Jane Deshotel owner of the insurance proceeds.  *New York Life Ins. Co. v. Jane Deshotel and June G. Smith*, No. 95-31050, slip op. (5th Cir., March 22, 1996)(per curiam).

_____

[2]  The insurance contract between Rodney Smith and New York Life provided in pertinent part:

While the Insured is living, the beneficiary designation can be changed from time to time by written notice in form satisfactory to the Company.  No such change will take effect unless recorded in the records of the Company at its Home Office.  Upon being so recorded, the change will be effective as of the date the notice was signed, whether or not the Insured is living when the change is recorded, subject to any payment made or other action taken by the Company before such recording.

Record at 162, *New York Life Ins. Co. v. Smith* (No. 96-31260).

5

After New York Life filed the interpleader action on October 11, 1994, Smith filed three state court delictual actions based on the alleged negligence in handling the change of beneficiary form by New York Life and its agents in the 15th Judicial District Court for the Parish of Lafayette, State of Louisiana. The first state court action was filed on April 20, 1995 by June G. Smith in her individual capacity and in her capacity as representative of the Succession of Rodney G. Smith against New York Life Insurance Company ("Smith I"). The second state court action was filed on April 26, 1995 by June G. Smith in her individual capacity and in her capacity as representative of the Succession of Rodney G. Smith against Linwood Broussard ("Smith II"). The third state court action was filed on October 30, 1995 by June G. Smith in her capacity as representative of the Succession of Rodney G. Smith against New York Life Insurance Company and Linwood Broussard ("Smith III"). In accordance with the instructions of Smith's attorney, the clerk of court withheld service of process on the defendants in the three state court delictual actions.

On May 28, 1996, soon after this court had affirmed the Eastern District Court's award of the insurance proceeds to Jane Deshotel and had denied Smith's petition for rehearing on April 19, 1996, Smith obtained an order from the state district court consolidating the three state court delictual actions, Smith I, Smith II, and Smith III, in state court. On May 27, 1996, New York Life received a copy of the *ex parte* motion to consolidate. This was the first notice New York Life received of the pending state

6

suits.  New York Life removed Smith I and III to the District Court for the Western District of Louisiana on June 4, 1996 and June 26, 1996, respectively.  Smith II was not removed and is pending in the state court.

In July 1996, Smith moved the Western District Court to remand Smith I and Smith III to state court.  On October 3, 1996, the Western District Court denied Smith's motions to remand.

Meanwhile, the Eastern District Court, on June 25, 1996, entered an amended judgment *sua sponte* to correct a clerical mistake by adding to its original judgment in the interpleader an order permanently enjoining Jane Deshotel and June G. Smith from instituting or prosecuting any proceedings against New York Life in any state or federal court pertaining to the proceeds of the life insurance policies.  On July 1, 1996, Smith moved the Eastern District Court to alter or amend its judgment to state that it does not enjoin her from bringing or prosecuting her delictual actions against New York Life in Smith I, Smith II, and Smith III.  New York Life opposed Smith's motion on grounds that her delictual claims against it were barred by res judicata because they should have been raised as compulsory counterclaims in the interpleader action.  On July 19, 1996, New York Life filed a motion for a preliminary and permanent injunction enjoining Smith from prosecuting her delictual claims against it in any state or federal court.

On November 21, 1996, the Eastern District Court denied Smith's motion to alter or amend its judgment; denied New York

Life's motion insofar as it sought to enjoin Smith from proceeding in Smith II, the action pending in state court; and entered judgment permanently enjoining Smith or the Succession of Rodney Smith from prosecuting the civil actions Smith I and Smith III, which had been removed to the Western District Court.

On November 22, 1996, based on the Eastern District Court's injunction, the Western District Court dismissed Smith I and III with prejudice.

## II.

Pursuant to the All Writs Statute, 28 U.S.C. § 1651, the Eastern District Court enjoined Smith's delictual actions against New York Life pending in the Western District Court. Under the All Writs Statute, a federal court has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court. *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir.), *cert. denied*, 404 U.S. 941 (1971); *Kentucky Fried Chicken, Corp. v. Diversified Packaging*, 552 F.2d 601, 603 (5th Cir. 1977); *see also Santopadre v. Pelican Homestead & Sav. Assn.*, 937 F.2d 268, 273 (5th Cir. 1991); 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 131.53 (3d ed. 1997). Accordingly, a federal court in a Rule 22 interpleader proceeding may issue an injunction to restrain the parties from pursuing such issues in another federal court. *See* 7 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1717, at 616; *Pan Am. Fire & Cas. Co. v. Revere*, 188 F. Supp. 474, 484 n.49 (E.D. La. 1960);

8

28 U.S.C.A. § 2283 revision notes (West 1994). The Eastern District Court found that the injunction was warranted because Smith's delictual claim against New York Life would be barred in a second action by res judicata and as a compulsory counterclaim that she failed to bring, as required by Rule 13(a), in the interpleader proceedings.

A.

Smith's principal argument on appeal is that her delictual action was not barred as a compulsory counterclaim because it had not accrued or matured at the time she served her pleading in the interpleader case. Thus, Smith relies primarily on one of the explicit exceptions to the compulsory counterclaim requirement of Federal Rule of Civil Procedure 13(a), *viz.*, that the party need not assert a counterclaim that has not matured at the time he serves his pleading. *See Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir.), *cert. denied*, 442 U.S. 921 (1979); 6 WRIGHT, *supra* § 1411, at 80.

We agree with the district court that Smith's delictual claim against New York Life had ripened into a mature claim at the time she filed her answer to the interpleader complaint on November 3, 1994. Therefore, her delictual claim was a compulsory counterclaim, and her failure to plead it bars her from bringing it as a later independent action in federal court. *See Dillard v. Security Pac. Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir. 1988); *Ake v. Chancey*, 149 F.2d 310 (5th Cir. 1945); 3 Moore, *supra* ¶ 13.14; WRIGHT, *supra* § 1417, at 129.

Under Louisiana law, a delictual cause of action accrues when a defendant violates a duty owed to a plaintiff and thereby causes damage to the plaintiff's legally protected interest. LA. CIV. CODE arts. 2315, 2316. A wrongful act alone does not suffice. There must also be damage caused by the wrongful act. It is the combination of the wrongful act, the damage, and the causal link between them that gives rise to the cause of action. *Owens v. Martin*, 449 So. 2d 448, 451 (La. 1984); *Jones v. Texas & Pac. Ry. Co.*, 125 La. 542, 544, 51 So. 582, 582-83 (1910). The one year prescription applicable to delictual actions does not commence to run, however, until the date that the injured party discovers or should have discovered the delict, the damage, and the relationship between them. LA. CIV. CODE arts. 3536, 3537; *see also Branch v. Willis-Knighton Med. Ctr.*, 636 So. 2d 211, 216 (La. 1994); *Lott v. Haley*, 370 So. 2d 521, 523 (La. 1979); *R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776, 783 (5th Cir. 1963).

Damage to a person's right or legally protected interest is sustained "'when it has manifested itself with sufficient certainty to be susceptible of proof in a court of justice.'" *Rayne State Bank & Trust Co. v. National Union Fire Ins. Co.*, 483 So. 2d 987, 996 (La. 1986) (quoting *Jones v. Texas & Pac. Ry. Co.*, 51 So. 582, 583 (La. 1910)). The cause of action arises, however, before the plaintiff sustains all or even the greater part of the damage occasioned by the delict. Any actual and appreciable injury flowing from the defendant's negligence or other wrongful act establishes a cause of action upon which the plaintiff may sue,

10

even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the tortious act. *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992); *Braud v. New England Ins. Co.*, 576 So. 2d 466, 468 (La. 1991); *Rayne State Bank*, 483 So. 2d at 996.

Applying these principles, the Louisiana Supreme Court held that a bank whose mortgages were challenged as being defective in bankruptcy court had an accrued legal malpractice cause of action against the attorney who drafted the mortgages, because "[t]his attack, which Rayne State Bank was forced to defend, was direct damage to the bank resulting from the existence of the defects, regardless of any future determination of further damage resulting from invalidity of the mortgages." *Rayne State Bank*, 483 So. 2d at 996. Similarly, that court in *Braud v. New England Insurance Company*, 576 So. 2d 466 (La. 1991), held that Braud, who had obtained a default judgment against Citicorp, acquired a legal malpractice action against his former attorney when Citicorp sued Braud to annul the judgment because Braud's former attorney allegedly engaged in ill practices and negligently failed to present sufficient evidence in obtaining the default judgment. The court stated: "Like the client in *Rayne State Bank & Trust v. National Union Fire Ins. Co.*, supra, Braud sustained appreciable and actual harm when the validity of his right or asset was attacked by a third party because of the alleged negligence of his former attorney and he was compelled to incur and pay attorney's fees, legal costs and expenditures." *Id.* at 469. Finally, in

11

*Harvey v. Dixie Graphics, Incorporated*, 593 So. 2d 351 (La. 1992), the state supreme court applied the appreciable actual injury test in holding that Harvey's malpractice action against an accounting firm accrued when he was informed by the IRS that he faced tax liability due to the firm's negligent tax return preparation after Harvey had incurred substantial accountant's and attorney's fees in investigating and preparing to defend against the potential tax assessment. The court explained that "[t]he mere fact that all of his damages were not yet suffered because he had not yet written a check to the IRS does not change the key fact that [Harvey] was certainly aware that he had suffered appreciable harm from the allegedly tortious act of [the accounting firm]." *Id.* at 355.

We do not agree with Smith's argument that her delictual action based on the alleged negligence of New York Life is analogous to an action for malicious prosecution and therefore could not accrue until the termination of the interpleader proceedings. An action for malicious prosecution in a criminal proceeding lies when there is a concurrence of the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. *Miller v. East Baton Rouge Parish Sheriff's Dept.*, 511 So. 2d 446, 452 (La. 1987).

12

The termination of the criminal proceeding in favor of the accused is an essential element for the accrual of a malicious prosecution cause of action. This element and others essential to a malicious prosecution action are required to balance the individual interest in freedom from unjustifiable litigation and the social interest in supporting a resort to law. *See* W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 119, at 871 (5th ed. 1984); HARPER, JAMES AND GRAY, THE LAW OF TORTS § 4.2, at 407-408 (2d ed. 1986). As we have noted above, the accrual of a delictual cause of action based on negligence requires only the concurrence of a wrongful act, damage, and a causal link between them. *Owens*, 449 So. 2d at 451; *Jones*, 51 So. at 582-83. The negligence action does not require the termination of other litigation and most other essential elements of a malicious prosecution action, probably because it involves a different balance of individual and societal interests.

In the present case, New York Life, pursuant to its interpleader petition under Rule 22, joined Smith and Deshotel as defendants and required them to interplead their claims. Clearly, their claims are adverse to each other because each claimant asserts sole rights to the proceeds of Rodney Smith's insurance policies. The interpleader complaint alleges facts that plainly indicate that Jane Deshotel is the only validly designated beneficiary of the policies because Rodney Smith's final change of beneficiary form naming June Smith as beneficiary was never processed or recorded although it had been forwarded to New York

13

Life's Customer Service Office for that purpose.

Under these circumstances, Smith's legal right as beneficiary to the insurance proceeds was challenged as being defective in a court of law. Like the plaintiffs in *Rayne State Bank* and *Braud*, Smith was forced to defend her rights against an attack in a judicial proceeding. This attack was "direct damage" to her rights resulting from the existence of the alleged defects, regardless of any future determination of further damage resulting from the invalidity of her beneficiary claims. *See Rayne State Bank*, 483 So. 2d at 996. Moreover, just as the *Rayne State Bank* and *Braud* plaintiffs, Smith sustained appreciable and actual harm from the legal attack upon her rights because she was compelled to incur and pay attorney fees and legal costs in her defense.

The interpleader complaint additionally gave Smith clear notice that her damage likely had been caused by the negligence of New York Life and its agents in failing to properly handle and record the change of beneficiary form naming her as sole beneficiary. Consequently, Smith's delictual action against New York Life accrued or matured no later than the date upon which she was served in the interpleader proceeding.

The Federal Rules of Civil Procedure, including their joinder provisions, apply in interpleader cases just as they would in any other civil action in federal court. *See* 4 MOORE, *supra* ¶ 22.02[5]. Once the stakeholder joins the claimants, a claimant may file a counterclaim against the stakeholder as an opposing party. *Wayzata Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 592-93 (8th Cir.

14

1988); *Liberty Nat'l Bank & Trust Co. v. Acme Tool Div.*, 540 F.2d 1375, 1380-81 (10th Cir. 1976); *Davis v. Prudential Ins. Co.*, 331 F.2d 346, 348 n.2 (5th Cir. 1964); *see also Libby, McNeill, and Libby v. City Nat'l Bank*, 592 F.2d 504, 507-08 (9th Cir. 1978); *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1307 (8th Cir. 1977). Counterclaims are either compulsory, if they arise from the same transaction or occurrence as the underlying dispute, FED. R. CIV. P. 13(a), or permissive, if they are transactionally unrelated to the underlying dispute, FED. R. CIV. P. 13(b). *See Wayzata Bank & Trust Co.*, 855 F.2d at 592-93 (claimants' separate cause of action against stakeholder for damages for breach of fiduciary duty was a compulsory counterclaim); 4 MOORE, *supra* ¶ 22.02[5].

The compulsory counterclaim rule requires a party to plead any counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a); *Reiter v. Cooper*, 507 U.S. 258, 263-264 (1993); *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 303-304 (5th Cir. 1993). To determine whether claim and counterclaim arise from the "same transaction or occurrence," federal courts have constructed analyses using as their foundation the logical relationship test developed by the Supreme Court under former Equity Rule 30. *See Moore v. New York Cotton Exch.*, 270 U.S. 593, 609-610 (1926) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the

15

immediateness of their connection as upon their logical relationship."). While using the "logical relationship" concept, this Circuit gives weight to whether the claim and counterclaim share an "aggregate of operative facts." *McDaniel*, 987 F.2d at 1381-82.

In the present case, it is readily apparent that New York Life's interpleader claim and Smith's delictual counterclaim share an aggregate of operative facts and have a logical relationship. Both logically relate to and arise from the same facts: Rodney Smith purchased life insurance policies from New York Life; he designated his wife, June Smith, and his friend, Jane Deshotel, his sole beneficiary on several different occasions; on his final attempt to change beneficiaries to name June Smith, his signed form was sent to New York Life, but for some yet undetermined reason, perhaps the company's negligence, it was not processed and recorded, so that Jane Deshotel was the last duly recorded beneficiary upon Rodney Smith's death. Indeed, Smith does not argue that the claims are not logically and factually related; instead she contends only that her delictual claim had not matured at the time she answered the interpleader complaint, an argument we rejected for the reasons previously assigned.

It is well settled that a failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim. *See, e.g.*, *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1080 (5th Cir. 1984). Consequently, we conclude that

16

the district court correctly determined that Smith's delictual action against New York Life is barred because it was a compulsory counterclaim that she failed to plead in the interpleader proceeding.

### B.

Smith's remaining arguments on appeal from the Eastern District Court's judgment may be dealt with readily.

In its order giving reasons for its summary judgment of September 7, 1995 awarding the insurance proceeds to Deshotel and enjoining Deshotel and Smith from proceeding against New York Life in any court pertaining to the insurance proceeds, the district court stated that "[n]othing in the injunction prevents Ms. Smith from bringing any action so long as it is not directed at the proceeds at issue here." Smith argues that, in view of this statement, the district court's later modification of the injunction to bar, as a compulsory counterclaim, her delictual action against New York Life in federal court was manifestly inequitable. This argument must be rejected. The district court did not err in its description of the initial injunction issued on September 7, 1995. The district court did not enjoin Smith from proceeding on her delictual actions until November 26, 1996, after Smith moved to clarify the court's judgment and New York Life responded with a motion to enjoin Smith from prosecuting her delictual claim in any state or federal court. Smith does not demonstrate that the court erred in its September 7, 1995 statement or explain how she was prejudiced by the statement.

17

Smith also briefly urges in this appeal an argument that she presents more fully in the companion appeal, *i.e.*, that her delictual claims were improperly removed to the Western District Court, that the Western District Court lacks jurisdiction of them and must remand the actions to the state court, and that the Eastern District Court's injunction, which expressly does not enjoin state actions, therefore cannot affect the improperly removed actions.

## III.

Turning to Smith's appeal from the judgment of the District Court for the Western District of Louisiana, we consider (1) *sua sponte* an inquiry into the district court's jurisdiction over Smith's negligence action against Linwood Broussard and New York Life in Smith III, (2) New York Life's challenge to our appellate jurisdiction based on Smith's notice of appeal, and (3) Smith's arguments for remanding the removed actions to state court.

## A.

A federal court of appeals has a duty to inquire into the basis of its jurisdiction and of the jurisdiction of the district court. *Arizonans for Official English v. Arizona*, -- U.S. --, 117 S. Ct. 1055, 1071 (1997). "'[I]f the record discloses that the lower court was without jurisdiction [a federal appellate court] will notice the defect, although the parties make no contention concerning it.'" *Id.* at 1071-72 (quoting *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)) (internal citations omitted) (brackets added). Our jurisdiction extends "'not [to] the

18

merits but merely for the purpose of correcting the error of the lower court in entertaining the suit'" when the district court lacks jurisdiction. *Id.* (same).

The record discloses that in Smith III complete diversity of citizenship is lacking because the plaintiff and the defendant Broussard are both Louisiana citizens. The district court erroneously concluded that Broussard's citizenship did not defeat diversity because any possibility of recovery against him had been eliminated by prescription. Prescription had not run, however, but had been interrupted by the timely filing of the same action against Broussard in Smith II.

Delictual actions in Louisiana are subject to a liberative prescription of one year. LA. CIV. CODE art. 3492. Prescription is interrupted, however, when the obligee commences action against the obligor (*e.g.*, when the tort victim sues the tortfeasor) in a court of competent jurisdiction and venue. *Id.* art. 3462. "An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue . . . continues as long as the suit is pending." *Id*. art. 3463. In cases in which a second suit is filed prior to abandonment, voluntary dismissal, or failure to prosecute of the first suit, on the same cause of action between the same parties, the interruption provided by the first suit is still viable at the time of the filing of the second suit, and the interruption remains viable during the pendency of the second suit, even if the first suit is later dismissed. *Deris v. Lee*, 613 So. 2d 962, 962 (La. 1993); *Martin v. Franklin State Bank*

19

*& Trust Co.*, 595 So. 2d 371, 373 (La. Ct. App. 2d Cir. 1992); *Levy v. Stelly*, 277 So. 2d 194, 196 (La. Ct. App. 4th Cir. 1973).

The district court found that prescription commenced on June 14, 1994, when Smith became aware that she had been damaged by Broussard and New York Life. Smith filed Smith II on the delictual claim naming Broussard as a defendant in a state court of competent jurisdiction and venue on April 26, 1995, within the one year prescriptive period. Hence, the timely filing of Smith II caused an interruption of prescription that was still viable when Smith III was filed and that remains viable during the pendency of Smith II or Smith III.[3]

Broussard's non-diverse citizenship cannot be ignored simply because he was an unserved defendant. A non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact

---

[3] New York Life argued below that Smith's filing of Smith II did not interrupt prescription because at the time she was not yet properly qualified as succession representative. However, "[i]t is sufficient to interrupt prescription that a cause of action be asserted that is adequate to put the defendant on notice of the nature of the claim against him." *Smith v. Williams*, 535 So. 2d 959, 962 (La. Ct. App. 2d Cir. 1988). "It is not necessary that the action be brought by the correct plaintiff or that he sue in the proper procedural capacity." *Id.* (citing *Jones v. Philco-Ford Corp.*, 441 So. 2d 1251, *on rehearing*, 452 So. 2d 370, 371 (La. Ct. App. 1st Cir. 1983), *writs denied*, 457 So. 2d 1193, 1198 (La. 1984)).

of service.  *Pullman Co. v. Jenkins*, 305 U.S. 534, 540-41 (1939); *Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983); *Pecherski v. General Motors Corp.*, 636 F. 2d 1156, 1160 & n.6 (8th Cir. 1981); *Preaseau v. Prudential Ins. Co.*, 591 F. 2d 74, 78-79 (9th Cir. 1979); *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969); *see also Everett v. MTD Products, Inc.*, 947 F. Supp. 441, 442 & n.1 (N.D. Ala. 1996); *In re Norplant Contraceptive Products Liability Litigation*, 889 F. Supp. 271, 273-76 (E.D. Tex. 1995); *Zaini v. Shell Oil Co.*, 853 F. Supp. 960, 963 (S.D. Tex. 1994); *Kelly v. Drake Beam Morin, Inc.*, 695 F. Supp. 354, 357 (E.D. Mich. 1988); *Schwegmann Bros. Giant Super Mkts. Inc. v. Pharmacy Reports, Inc.*, 486 F. Supp. 606, 614-15 (E.D. La. 1980); *cf. Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1265 & n.4 (9th Cir. 1992).

Accordingly, the district court's judgment in Smith III will be vacated and the case will be remanded to the district court with directions to remand that case to the state court.  The collateral effects upon the state court proceedings, if any, of the Eastern District Court's judgment, which we have affirmed, must be considered and determined by the state courts.

B.

Remaining for our consideration is Smith's appeal from the judgment of the Western District Court in Smith I.  New York Life questions the scope of our appellate jurisdiction, contending that Smith did not preserve for our review alleged errors in the

21

district court's ruling denying remand.

In opening briefs, Smith challenged two aspect of the district court's order denying remand. Smith argued New York Life filed notice of removal out of time. In the alternative, Smith contended the district court erred in denying her leave to amend to join Broussard, a non-diverse party, as a defendant. However, the notice of appeal designated "the order dismissing the above captioned consolidated actions and the incidental order recognizing the Motion to Alter Judgment as moot" dated November 22, 1996. It did not specifically appeal from the October 3, 1996 order denying Smith's motion to remand. That omission, New York Life argues, precludes review of these two issues.

We disagree. Rule 3(c) of the Federal Rule of Appellate Procedure requires the appellant to "designate the judgment, order, or part thereof appealed from" in the notice of appeal. FED. R. APP. PROC. 3(c). While the requirements of Rule 3(c) are jurisdictional, and "noncompliance is fatal to an appeal," courts construe a notice of appeal liberally to avoid technical barriers to review. *Smith v. Barry*, 502 U.S. 244, 248 (1992). A mistake in designating orders to be appealed does not bar review if the intent to appeal a particular judgment can be fairly inferred and if the appellee is not prejudiced or misled by the mistake. *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1992).

Applying this circuit's precedents, we conclude that Smith preserved her right to have the district court's ruling reviewed. First, the order designated in the notice is the final judgment in

this case. "[A]n appeal from a final judgment preserves all prior orders intertwined with the final judgment." *Trust Co.*, 104 F.3d at 1485. Second, the issues in that final order are inextricably intertwined with the issue of whether the court properly exercised removal jurisdiction: the final judgment was predicated on the district court's decision that removal was proper and that the cases were properly pending in the Western District Court. *See Trust Co.*, 104 F.3d at 1486. Moreover, any doubts as to Smith's intent to appeal these issues are resolved by Smith's opening briefs, in which Smith advances arguments on both issues. For these reasons the notice of appeal coupled with the opening briefs gave New York Life adequate notice that the matters were at issue in this appeal. New York Life fails to demonstrate that it was prejudiced by any deficiency in the notice of appeal.

New York Life's contention that we have no jurisdiction to review claims on behalf of the estate of Rodney Smith because Smith's notice of appeal does not refer to the estate specifically is contrary to our case law. "A party's failure to designate all of the capacities in which he brings suit does not defeat jurisdiction." *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996).

### C.

Smith contends that New York Life did not timely file its notices of removal and that this procedural defect invalidates the removals and requires that Smith I and Smith III be remanded to the state court. We have decided above that Smith III must be remanded because the district court was without jurisdiction of Smith III

23

due to lack of complete diversity.  Accordingly, we address Smith's argument that removal was untimely only as it pertains to Smith I.

Smith filed Smith I against New York Life only in state court on April 20, 1995.  New York Life removed Smith I on June 4, 1996, more than one year after Smith I was filed.  However, New York Life did not receive a copy of Smith's initial pleading in Smith I until May 28, 1996, less than thirty days prior to the removal of that civil action.

The procedure for removal is set forth by 28 U.S.C. § 1446. The pertinent part governing timeliness of removal in the present case, Section 1446(b), provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become

24

removable, *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of this action.* 28 U.S.C. § 1446(b) (emphasis added).

Under both Louisiana and federal law, an action "commences" when it is filed. LA. CODE CIV. PROC. art 421 ("A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction."); FED. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court."); *see also Allred v. Moore & Peterson*, 117 F.3d 278, 283 (5th Cir. 1997); *de la Vergne v. de la Vergne*, 479 So. 2d 549, 550 (La. Ct. App. 1st Cir. 1985); *Haynie v. Haynie*, 452 So. 2d 426, 427 (La. Ct. App. 3d Cir. 1984); *Sims v. Sims*, 247 So. 2d 602, 604 (La. Ct. App. 3d Cir. 1971); *Saxon v. Fireman's Ins. Co.*, 224 So. 2d 560 (La. Ct. App. 3d Cir. 1969); *accord Martine v. National Tea Co.*, 841 F. Supp. 1421, 1422 (M.D. La. 1993). Smith contends that New York Life's removal of Smith I well over thirteen months after the action commenced violated the one-year limitation established by Section 1446(b).

The question presented is whether the one-year limitation for removal of diversity cases under Section 1446(b) applies only to those state court cases that are not initially removable, or to all diversity cases that a defendant seeks to remove. The federal district courts are disunited on the issue. *Compare, e.g., Rezendes v. Dow Corning Corp.*, 717 F. Supp. 1435, 1438-39 (E.D.

25

Cal. 1989) (one-year limit is an absolute bar to removal of all diversity cases), *with, e.g.*, *Breese v. Hadson Petroleum, Inc.*, 947 F. Supp. 242, 243-44 (M.D. La. 1996) (one-year limit applies only to cases that are not initially removable), *and, e.g.*, *Kinabrew v. Emco-Wheaton, Inc.*, 936 F. Supp. 351, 353 (M.D. La. 1996) (one-year limit applies to all diversity actions with exceptions as equity demands). We have not found a Supreme Court or circuit court decision that resolves the issue.

In determining the meaning of the statute, we must look not only to the particular statutory language, but also to the statute as a whole, including its design, object, and policy. *Crandon v. United States*, 494 U.S. 152, 158 (1990) (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988), and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987)); *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989) (citing *Pilot Life Ins. Co.*, 481 U.S. at 51). "[T]he meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citing *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 26 (1988); *see also id.* ("'Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used . . . .'")(quoting Judge Learned Hand in *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2nd Cir. 1941)(quoted in *Shell Oil*, 488 U.S. at 25 n.6)).

When read in its entirety with these precepts in mind, Section

26

1446 requires that we interpret the one-year limitation on diversity removals as applying only to the second paragraph of that section, *i.e.*, only to cases that are not initially removable. Section 1446(b) consists of two single sentence paragraphs. The first paragraph applies only to civil actions in which the case stated by the initial pleading is removable. The second paragraph applies only to civil actions in which the initial pleading states a case that is not removable. The dependent phrase -- "except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action" -- is incorporated into the second paragraph. Normally, one would read such a phrase as relating only to the sentence or paragraph of which it is a part. Section 1446(b) does not reasonably indicate a contrary intention. Courts applying the one-year limitation to the first paragraph of Section 1446(b) can do so only by distorting its ordinary meaning. They are forced to read the words "except that" out of the statute and treat the remainder of the phrase as if it were an independent one-sentence paragraph. They, in effect, must rewrite the statute. For if the statute is read as written, it is not plausible that Congress intended to affect the statement of the first paragraph by creating an exception to that made by the second paragraph. If Congress had intended for the one-year limit to apply to all diversity removals, it is highly unlikely it would have chosen such an eccentric and obscure means to accomplish its purpose. *See* 14A WRIGHT *supra* § 3723, at 284 (Supp. 1997).

27

Although the scant legislative history regarding Section 1446(b) is not completely without ambiguity, it lends substantial support to this interpretation.  The legislative history provides:

> Subsection (b)(2) amends 28 U.S.C. s 1446(b) to establish a one-year limit on removal based on diversity jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in state court.  The result is a modest curtailment in access to diversity jurisdiction.  The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court.  The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction.  Under Section 1446(b), removal is possible whenever this event occurs, so long as the change of parties was voluntary as to the plaintiff.  Settlement with a diversity-destroying defendant on the eve of trial, for example, may permit the remaining defendants to remove.  Removal late in the proceedings may result in substantial delay and disruption.

H.R. REP. NO. 100-889 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6031-6034;  *see also* 134 CONG. REC. 31064 (1988).

The congressional report states that the one-year limit on removal based on diversity jurisdiction establishes "a means of reducing the opportunity for removal after substantial progress has been made in state court."  *Id.*  Substantial state court progress

28

cannot occur in cases that are initially removable under the first paragraph of Section 1446(b), (unless, of course, the defendant fails to remove, in which event the case will remain in state court and the expenditure of its resources will not have been wasted).[4] The report also states that the legislation addresses problems that arise from "a change of parties as an action progresses toward trial in state court," such as "when the elimination of parties may create for the first time a party alignment that supports diversity jurisdiction." *Id.* Congressional concern is expressed that "settlement with a diversity-destroying defendant on the eve of trial, for example, may permit removal by the other defendants, causing substantial delay and disruption." *Id.* These problems are associated with cases not initially removable on diversity grounds that are governed by the second paragraph of Section 1446(b), not with cases dealt with in the Section's first paragraph, in which the initial pleading sets forth a case removable on the basis of diversity jurisdiction.

In the present case, the initial pleading of Smith I sets

---

[4] Even if there are multiple defendants, the general rule is that "'[i]f the first served defendant abstains from seeking removal or does not effect a timely removal, subsequently served defendants cannot remove . . . due to the rule of unanimity among defendants which is required for removal.'" *Brown v. Demco, Inc.*, 729 F.2d 478, 481 & n.11 (5th Cir. 1986)(quoting 1A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, ¶ 0.168 [3.5-5], 586-87 (2d ed. 1985) and citing 14A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2d, § 332 at 531-32)); *accord Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1262-63 (5th Cir. 1988); *Brooks v. Rosiere*, 585 F. Supp. 351, 353 (E.D. La. 1984); *Friedrich v. Whittaker Corp.*, 467 F. Supp. 1012, 1013-14 (S.D. Tex. 1979); *Jones v. Scogin*, 929 F. Supp. 987 (W.D. La. 1996); *see also* 16 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 107.30[3][a] (3d ed. 1997).

forth a case that is removable on the basis of diversity jurisdiction. The first paragraph of Section 1446(b) provides that the notice of removal of such a civil action shall be filed within thirty days after the receipt by the defendant of a copy of the initial pleading. The defendant New York Life filed its notice of removal timely within thirty days of its receipt of the plaintiff's initial pleading. Consequently, there was no procedural defect in the removal of Smith I, and the district court reached the correct result in denying Smith's motion to remand that case to state court.

Smith also argues that the district court erred in not allowing her to amend her petition in Smith I to name Broussard as a defendant so as to destroy complete diversity and require a remand of the case. We do not reach this issue because the Eastern District Court's injunction prevents Smith from proceeding further in Smith I.

Because Smith I was properly before the Western District Court, and we have affirmed the judgment of the Eastern District Court permanently enjoining Smith from proceeding in Smith I, we find no error in the Western District Court's decision to dismiss Smith I based on that injunction.

IV.

For the reasons assigned, (1) the judgment of the Eastern District Court in No. 96-31260 is AFFIRMED, (2) the judgment of the Western District Court in No. 96-31269 with respect to Smith I is AFFIRMED, and (3) the judgment of the Western District Court in No.

30

96-31269 with respect to Smith III is VACATED, and Smith III is REMANDED to the district court with instructions to REMAND the case to the state court.