# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30018

WORLD FUEL SERVICES SINGAPORE PTE, LIMITED,

      Plaintiff - Appellant

v.

M/V AS VARESIA, her engines, tackle, apparel, etcetera, in rem,

      Defendant - Appellee

MS AS VARESIA GMBH & COMPANY KG,

      Claimant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-17435

Before BARKSDALE, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Appellant, a Singapore-based marine fuel supplier, seeks to recover a debt arising from the supply of fuel to a Liberian-flagged vessel, the M/V AS VARESIA, whose owner is the real party in interest in this case. This appeal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30018

concerns whether the district court reversibly erred by vacating an arrest of the vessel.  Finding it did not, we AFFIRM.

## I

In 2012, Plaintiff-Appellant World Fuel Services Singapore PTE Ltd. (World Fuel) contracted to provide marine fuel to Denmar Chartering and Trading GMBH (Denmar), which was chartering the cargo ship M/V AS VARESIA (the Varesia).  The fuel was delivered on November 4, 2012, and World Fuel sent an invoice to the Varesia "AND/OR HER OWNERS/OPERATORS" and Denmar for $612,459.56.  The invoice indicated that the balance was due by December 4, 2012.  Denmar failed to pay this invoice by the due date, but did wire one payment of $200,023 on January 18, 2013, and one payment of $500,023 on January 22, 2013.  The parties dispute whether these payments were to be apportioned to the Varesia invoice or to other debts Denmar owed World Fuel.

Denmar liquidated via insolvency proceedings in Germany in or around July 2013. World Fuel received notice of these proceedings by September 2013, but did not participate in them.  World Fuel alleges that, at the time of Denmar's insolvency, Denmar owed World Fuel over five million dollars across multiple invoices, including the Varesia invoice.  World Fuel claims that Denmar's failure to pay for the fuel gave rise to a maritime lien on the Varesia.

In May 2015, World Fuel sent a demand letter to MS AS VARESIA GMBH & Company KG, the owner of the Varesia (the Owner).  In May 2016, World Fuel again demanded payment from the Owner and commenced a legal action in Australia to arrest the vessel, but ultimately did not have the vessel arrested.

On the evening of December 10, 2016, the Varesia arrived in the Mississippi River.  On December 15th, World Fuel filed a complaint in the

No. 17-30018

Eastern District of Louisiana seeking to enforce its lien and seeking a warrant for the arrest of the Varesia. A warrant issued that same day, but at World Fuel's request, the warrant was not served until the morning of January 5, 2017.

Hours after the warrant was served, the Owner filed a motion to vacate the arrest, arguing, inter alia, that any lien had "been extinguished by the operation of laches and/or by payment." In its memorandum in support of vacatur, the Owner contended that Denmar had allocated specific payments to the Varesia invoice, thereby extinguishing any lien on the Varesia. The Owner also argued that laches barred enforcement of the lien because (1) World Fuel's action was filed after the expiration of the analogous limitations period, (2) World Fuel's delay was not excusable, and, as a result of the unjustified delay, (3) the Owner suffered prejudice in its ability to defend against the claim.

The district court held a hearing on the motion to vacate the morning of Friday, January 6th. Counsel for World Fuel stated that he had not seen the motion to vacate until "very late" the night before, and so had not had an opportunity to research the laches issue. However, World Fuel asserted that in the years between the invoice and the arrest of the vessel in New Orleans, it "was attempting to collect from Denmar and following the [Varesia] to seek an opportunity to enforce the lien," suggesting that World Fuel could not enforce its lien until the Varesia entered the United States. In response to the court's questions about what "course of conduct" demonstrated "any type of attempt to pursue the claim," rather than just the vessel, World Fuel pointed to the demand letter sent to the Owner in 2015 and stated that there may have been other factors showing World Fuel's diligence. World Fuel continued that, even if there was unjustified delay, there was no resultant prejudice to the Owner inasmuch as the record was "clear" that the Owner had "the ear of

3

No. 17-30018

Denmar's [former] managing director," the ability to get "documents from him," and the ability to get "a sworn declaration from him."

At the end of the motion hearing, the district court stated that it did not believe that the Owner's argument regarding apportionment of payments to the Varesia debt successfully defeated World Fuel's right to effect an arrest in good faith.  However, the court requested an opposition memorandum from World Fuel addressing the Owner's arguments with respect to laches.  The court expressed concern that the Varesia had been taken out of commerce, which the Owner claimed cost roughly $27,000 per day.  Accordingly, the court stated that any additional filings should be submitted by 9:00 am Monday, January 9th, so as to expedite the matter while giving World Fuel the opportunity to "respond fully to the laches argument."  The court indicated that it might rule on the motion as early as 9:45 am on January 9th.

On January 9th, the court extended the deadline for filing a response to 11:00 am.  World Fuel failed to file any opposition before the deadline.  At 2:15 pm, the court ruled that, "[o]n the showing made," the warrant for the arrest of the Varesia was improvidently issued and should be vacated.  After the district court entered its order, World Fuel filed its opposition.  The district court then entered an order denying World Fuel's "Ex Parte Emergency Motion to Reconsider."  That motion is not in the record on appeal.

On January 10th, World Fuel filed a notice of appeal "from the order/judgment" that was "rendered and entered on January 9, 2017," citing to the docket number of the order vacating the arrest of the Varesia.

## II

In maritime cases, as is the general rule in civil appeals, we review the district court's factual determinations "for clear error and its conclusions of law de novo."  *United States v. Ex-USS Cabot/Dedalo*, 297 F.3d 378, 381 (5th Cir.

4

No. 17-30018

2002) (emphasis omitted).  "The existence of laches is a question of fact," *Esso Int'l, Inc. v. The SS Captain John*, 443 F.2d 1144, 1150 (5th Cir. 1971) (citing *McDaniel v. Gulf & S. Am. Steamship Co.*, 228 F.2d 189 (5th Cir. 1955)), and therefore it is reviewed for clear error.

## III

Under the Commercial Instruments and Maritime Liens Act, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel."  46 U.S.C. § 31342(a)(1).[1]   When a party has a maritime lien, the mechanism of enforcement is an in rem action commenced by the arrest of the vessel.  *See, e.g.*, *Merchs. Nat'l Bank v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1344–45 (5th Cir. 1981).  After a vessel is arrested, the owner is entitled to a prompt post-seizure hearing, "at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with" the applicable rules of procedure.  FED. R. CIV. P. SUPP. R. E(4)(f) (Rule E); *see also* Rule E Notes of Advisory Committee on 1985 Amendments ("The plaintiff has the burden of showing why the seizure should not be vacated."). "The hearing is not intended to definitively resolve the dispute between the parties; rather, the [c]ourt must make a preliminary determination whether reasonable grounds exist for the arrest."  *A. Coker & Co. v. Nat'l Shipping Agency Corp.*, No. CIV. A. 99-1440, 1999 WL 311941, at *1 (E.D. La. May 17, 1999) (citing *Salazar v. Atl. Sun*, 881 F.2d 73, 79–80 (3d Cir. 1989)).

World Fuel argues that the district court's deadline to file an opposition did not allow sufficient time to prepare an opposition memorandum.   World Fuel asserts that its ability to meet this deadline was hampered because its

---

[1] The parties do not dispute for present purposes that the basic prerequisites of this provision have been met.

"witness for the laches issue was largely unavailable to gather documents and prepare his supporting affidavit because of out-of-town Navy Reserve" duty.

The Federal Rules of Civil Procedure do not impose any formal requirements for a post-seizure hearing, leaving the procedural details to local rules or the district court's discretion. *See S & S Diesel Marine Servs. v. M/V F-Troop*, No. 11-60020-CIV, 2011 WL 1899402, at *8 (S.D. Fla. May 18, 2011) ("As the Supplemental Admiralty rules do not specify the form of the post-arrest hearing, the details of the proceeding are left to the [c]ourt's discretion." (citing *Salazar*, 881 F.2d at 79)). World Fuel did not object to the district court's deadline at the motion hearing and, on appeal, World Fuel does not point to any rule contravened by the district court's short deadline. The district court did not arbitrarily set a tight deadline; rather, it explained its concern that the Owner was incurring significant costs each day the Varesia was arrested and therefore out of commerce. World Fuel does not argue that this concern was unfounded. Thus, World Fuel has not shown that the district court abused its discretion in setting the deadline to file an opposition memorandum.

Nor has World Fuel established an abuse of discretion as to the district court's refusal to withhold judgment until it received World Fuel's response. Extra-record materials cited by World Fuel show that, at 7:29 am on the day its response was due, World Fuel requested an extension until 11:00 am based on the unavailability of its witness. This extension was granted. At 11:44 am, a district court law clerk emailed counsel for World Fuel, inquiring about the status of the opposition on the judge's behalf. World Fuel replied that it "should have everything together by 1:30 [pm]." The law clerk responded that the judge was in a meeting until 1:00 pm. At 1:59 pm, counsel for World Fuel emailed that the "client and his supervisor [were] reviewing the papers for

approval. [He] should have them shortly." The court issued its order at 2:15 pm. World Fuel emailed its response to the court at 2:22 pm. At 2:45 pm, World Fuel emailed the judge's law clerk an "Ex Parte Emergency Motion to Reconsider," which, as reflected by the record, was denied.

The court granted World Fuel the only two extensions it expressly requested, formally to 11:00 am and then tacitly to 1:30 pm. In light of the district court's broad discretion to enforce its filing deadlines, *cf., e.g.*, *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995), World Fuel has not demonstrated that the district court abused its discretion by failing to grant additional extensions.

Further, to the extent World Fuel argues that the district court erred by failing to reconsider its order in light of World Fuel's late-filed opposition, World Fuel's failure to appeal the denial of its motion for reconsideration deprives us of jurisdiction to review that order. One of the minimum prerequisites for a notice of appeal is to "designate the judgment, order, or part thereof being appealed." FED. R. APP. P. 3(c)(1)(B); *see Kinsley v. Lakeview Reg'l Med. Ctr. LLC*, 570 F.3d 586, 589 (5th Cir. 2009). This rule is construed liberally, such that "[a] mistake in designating orders to be appealed does not bar review if the intent to appeal a particular judgment can be fairly inferred and if the appellee is not prejudiced or misled by the mistake." *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 884 (5th Cir. 1998) (citing *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991)). However, "when only a specified judgment or part thereof is noticed, the notice of appeal is generally strictly construed." *Lockett v. Anderson*, 230 F.3d 695, 700 n.3 (5th Cir. 2000) (quoting *United States v. O'Keefe*, 128 F.3d 885, 890 n.4 (5th Cir. 1997)).

World Fuel's notice of appeal references the particular docket number of the order vacating the arrest and in no way intimates that other orders are

being appealed. Moreover, World Fuel's briefing does not make clear that it is appealing the order denying reconsideration, and World Fuel does not argue that this court has jurisdiction over an appeal from that order. Inadequately briefed arguments are generally deemed forfeited. *See Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, 96 (5th Cir. 2014). We therefore will not consider whether the district court abused its discretion in denying World Fuel's motion for reconsideration, as this issue is not properly before us.

This leads us to the district court's merits determination, which we will consider in light of the arguments and evidence before the court at the time it ruled. *See World Fuel Servs. Singapore Pte, Ltd. v. Bulk Juliana M/V*, 822 F.3d 766, 772 n.2 (5th Cir. 2016) (arguments not made in the district court cannot be raised for the first time on appeal); *Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999) ("An appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling.").[2]

Where a party unreasonably delays in asserting a maritime lien, the lien may be extinguished by the doctrine of laches. *See The Key City*, 81 U.S. 653, 660 (1871). "Laches is an equitable doctrine that, if proved, is a complete defense to an action irrespective of whether the analogous state statute of limitation has run." *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980). This court employs a three-part test to determine whether laches precludes enforcement of a lien, deciding: (1) whether there was a delay in asserting the lien; (2) whether the delay was excusable; and (3) whether the delay resulted in undue prejudice to the party against whom the

---

[2] World Fuel fails to explain why this court should consider its additional arguments and evidence. Thus, and for the reasons previously discussed, we will not.

No. 17-30018

lien is asserted. *See id.* Courts regularly look to an analogous statute of limitations to guide the analysis of what constitutes an unreasonable or inexcusable delay. *See, e.g.*, *id.* But "[r]ather than marking an absolute cut-off date beyond which injured parties may no longer effectively bring suit, the analogous limitations period determines where falls the burden of proving or disproving inexcusable delay and resulting prejudice." *Barrois v. Nelda Faye, Inc.*, 597 F.2d 881, 884 (5th Cir. 1979). "Where . . . the statute has run prior to instituting suit, the plaintiff must prove either absence of prejudice or excuse for delay to repel a claim of laches." *Mecom*, 622 F.2d at 1215 (citing *Watz v. Zapata Off-Shore Co.*, 431 F.2d 100, 11 (5th Cir. 1970)).

In the district court, the Owner asserted that: (1) the analogous statute of limitations was three years; (2) World Fuel had not taken any action against the Owner in those three years, aside from tracking the vessel and contacting the Owner once in May 2015 and once in May 2016, despite the fact that World Fuel knew that Denmar was insolvent by September 2013; (3) the Varesia ported multiple times in jurisdictions in which World Fuel could have arrested her; and (4) World Fuel's delay prejudiced the Owner's ability to defend against World Fuel's claim because it can no longer obtain corporate records from Denmar that might substantiate the Owner's other principal theory in defense, that there was an agreement to allocate certain payments to the Varesia debt.

At the time of the district court's ruling, World Fuel's counterarguments were limited. It had not made any arguments supporting its assertion that a different analogous statute of limitations should be considered. World Fuel argued that it had been diligent in enforcing its lien as, from 2012 until the time of the arrest in 2016, World Fuel attempted "to collect from Denmar and follow[ed] the vessel to seek an opportunity to enforce the lien"; it sent a demand letter to the Owner in 2015; and it filed papers commencing arrest

proceedings in Australia in 2016.  World Fuel also implied that the Varesia had not docked anywhere that World Fuel could have seized her until she arrived in New Orleans, though the Owner disputed this point.  World Fuel claimed that the Owner had not been prejudiced by the delay in enforcement because it had access to Denmar employees who could testify in support of the Owner's position as well as documents bearing on its defense.

World Fuel had the "burden of showing why the [arrest of the Varesia] should not be vacated." *See* Rule E Notes of Advisory Committee.  In light of its failure to make specific and timely arguments to the contrary, World Fuel cannot show that it was erroneous for the district court to look to Louisiana's three-year statute of limitations and, accordingly, to place the burden of proving excusable delay or lack of prejudice on World Fuel.  *See Barrois*, 597 F.2d at 884.  The Owner made plausible arguments tending to show that World Fuel's delay was not reasonable and that the Owner was prejudiced by this delay.  World Fuel's contention that it sent two demand letters and tracked the Varesia is not sufficient to show diligence. Nor was World Fuel's disputed assertion that it was unable to seize the Varesia before she arrived in New Orleans.  And although World Fuel argued that the Owner could obtain some information from Denmar's former managing director, World Fuel provided nothing to the district court tending to rebut the Owner's claim that other relevant documentary evidence was rendered unavailable by delaying enforcement of the lien until long after Denmar's liquidation.  Like many of the issues in this appeal, invocation of laches "is addressed to the sound discretion of the trial court." *Goodwyn v. Dredge Ginger Ann*, 342 F.2d 197, 197 (5th Cir. 1965).  Given the circumstances, World Fuel has not shown that the district court's invocation of laches at this preliminary stage in the proceedings constitutes reversible error.

No. 17-30018

\*\*\*

For these reasons, we AFFIRM the order of the district court.